756 So.2d 290 (2000)
Lisa Smith Munn GUILLOT
v.
Marion Patrick MUNN, Jr.
No. 99-C-2132.
Supreme Court of Louisiana.
March 24, 2000.
*292 William Michael Stemmans, Baton Rouge, Counsel for Applicant.
Allen Murph Posey, Baton Rouge, Counsel for Respondent.
KIMBALL, Justice.[*]
We granted certiorari in this case to consider whether Louisiana's child support guidelines automatically allow for a deviation from their formulaic determination of the support obligation based solely on the amount of time a nondomiciliary parent spends with a child. We find that such an automatic deviation is not allowed. Rather, the party urging a reduction in the child support obligation based on the amount of time spent with the child must bear the burden of proving that he or she exercises shared custody or extraordinary visitation with the child, that the extra time spent with the nondomiciliary parent results in a greater financial burden on that parent and in a concomitant lesser financial burden on the domiciliary parent, and, finally, that the application of the guidelines would not be in the best interest of the child or would be inequitable to the parties. Because the record in this case is devoid of any information relating to these issues, the case is remanded to the trial court for further proceedings consistent with this opinion.
The parties in this case, Lisa Smith Munn Guillot and Marion Patrick Munn, Jr., were married in East Baton Rouge Parish on September 5, 1981. Two children were born of this marriage, Kyle Patrick on August 11, 1984, and Jason Brice on April 20, 1988. The parties separated on February 6, 1991, and were divorced by judgment dated October 2, 1991. On November 5, 1993, a stipulated judgment was entered into wherein Mr. Munn agreed to pay Ms. Guillot the sum of $640.00 per month as child support for the two minor children. Also on November 5, 1993, a consent judgment providing for custody of the minor children was signed. That judgment awarded joint custody of the children to the parents and named the mother, Ms. Guillot, as primary domiciliary parent. The father, Mr. Munn, was given physical custody of the children on alternate weekends of each month, on certain holiday periods, for three two-week periods during the summer, and for one additional week during the year.
On June 2, 1994, approximately seven months after these judgments were signed by the trial court, Mr. Munn filed a rule for decrease in child support alleging two substantial changes in circumstances as the basis for modification of the child support judgment. A hearing on this rule was held on September 6, 1994. It was stipulated that child care costs for the children had been reduced from $300.00 per month to $90.00 per month. Additionally, Mr. *293 Munn and his new wife had a child in December 1993. It was further stipulated that Ms. Guillot's gross monthly income was $2,046.00 and Mr. Munn's gross monthly income was $2,885.00. Mr. Munn argued that the decrease in child care costs and the birth of his new child warranted a reduction in his child support obligation.
The trial court found that there had been a change in circumstances sufficient to allow a recalculation of child support. In recalculating the child support obligation, the trial court first gave Mr. Munn a "credit" for his newborn by subtracting from his gross monthly income $446.00, the basic support amount stated in the guidelines for one child at Mr. Munn's level of income. Thus, the trial court reduced Mr. Munn's monthly income to $2,439.00. Using this reduced amount of income, the trial court next determined the combined gross income of the two parties was $4,485.00, which yielded a basic child support obligation of $992.00. To this amount, the court added the child care costs of $90.00, which resulted in a total support obligation of $1,082.00. After determining Mr. Munn's percentage share of the child support obligation would ordinarily be $584.28, the trial court gave Mr. Munn another "credit" for the 37% of the time the children spent with him under the parties' visitation schedule, thereby reducing the amount Mr. Munn owed in child support to $226.00. By judgment signed on October 25, 1994, Mr. Munn's child support obligation was reduced to $226.00 per month commencing on September 1, 1994.
On appeal, the trial court's judgment was affirmed by the court of appeal in an unpublished decision. Guillot v. Munn, 95-0546 (La.App. 1 Cir. 11/9/95), 666 So.2d 1351. Ms. Guillot applied for a writ of certiorari from this court which was granted in part. In a per curiam opinion, this court reversed the court of appeal's decision and vacated the trial court's judgment, finding that the trial court erred in failing to articulate specific reasons detailing the facts and circumstances that prompted it to deviate from the child support guidelines. Although the trial court is allowed to consider the legal obligation of a party to support dependents who are not the subject of the action before the court and who are in that party's household in determining whether to deviate from the guidelines, no evidence was introduced in this case as to the expenses incurred in supporting the child born to Mr. Munn's subsequent marriage nor the extent to which his present wife contributed to the support of that child. This court also held that the trial court erred in calculating the parties' monthly adjusted gross income because Mr. Munn was not entitled to a "credit" for his child born of a subsequent marriage since he had no preexisting child support obligation relative to that child. The case was therefore remanded to the trial court for further proceedings. Guillot v. Munn, 96-0620 (La.6/21/96), 676 So.2d 86.
On remand, the trial court, without receiving additional evidence, recalculated the child support obligation without giving Mr. Munn a "credit" for his child born of a subsequent marriage. The trial court determined that Mr. Munn's portion of the child support obligation would ordinarily be $677.50, but deviated from this amount provided by the guidelines to again give Mr. Munn a "credit" for some portion of the 37% of time the children spent with him. In calculating the amount Mr. Munn would be required to pay in child support, the trial court stated,
Based on the amount of time that Mr. Munn has the children, he's incurring additional expenses with the children that Ms. Guillot should not have to bear. Therefore, the Court will reduce Mr. Munn's child support obligation by 30% which is $203.50, that amount is subtracted from $677.50, leaving a balance of $474.00, that amount is the amount Mr. Munn shall pay to Ms. Guillot for *294 the maintenance and support of the two children....
The court ordered that payment totaling $474.00 per month was to commence on February 1, 1997. The trial court additionally ordered that Mr. Munn pay to Ms. Guillot arrearages in the amount of $2,456.00, which resulted from the trial court's earlier mathematical miscalculation when it initially set the amount of Mr. Munn's child support obligation.[1] This judgment was signed on January 24, 1997. On February 12, 1997, the trial court issued second amended reasons for judgment wherein it reaffirmed its decision relative to arrearages and the commencement date of the payments of $474.00. The court also provided that legal interest on the arrearages awarded was to commence on the date this court's per curiam opinion was rendered and that each party was to bear his own costs. The trial court's findings on remand were incorporated into a judgment which was signed on March 11, 1997. Ms. Guillot appealed the judgment of the trial court.
On appeal, the case was originally heard by a three-judge panel. Because the members of that panel could not agree on a disposition of the case, a five-judge panel was selected to hear the case. The members of that five-judge panel could not agree on a disposition and handed down a per curiam opinion affirming the judgment of the trial court. Guillot v. Munn, 97-1431 (La.App. 1 Cir. 1/14/99). Ms. Guillot sought supervisory writs from this court which were granted. This court, in a per curiam opinion, vacated the judgment of the court of appeal and remanded the case, ordering the court of appeal to "render judgment, by majority vote, on all issues in the case, whether by single vote, by separate vote on each issue, or by a per curiam of the court with members expressing their concurrence or dissent separately." Guillot v. Munn, 99-0273 (La.4/23/99), 734 So.2d 613.
On remand, the court of appeal, in a per curiam decision, affirmed the trial court's calculation of Mr. Munn's child support obligation in the amount of $474.00 per month. The court affirmed the trial court's judgment regarding costs and the commencement of the recalculated child support obligation, but amended the trial court's judgment on the issues of arrearages and legal interest holding that the proper amount of arrearages owed was $6,944.00 and that legal interest should accrue from the date each monthly payment became due.
This court granted Ms. Guillot's application for certiorari to address the issue of whether Louisiana's child support guidelines automatically allow for a deviation based solely on the amount of time a nondomiciliary parent spends with a child. Specifically, we must determine whether the trial court erred in deviating from the guidelines to allow Mr. Munn a 30% "credit" for the time the children spent with him. Guillot v. Munn, 99-2132 (La.11/5/99), 750 So.2d 973. Such an issue has never before been addressed by this court.
Prior to the enactment of child support guidelines, support awards were determined on a case-by-case basis and subject to wide judicial discretion. Christopher L. Blakesley, Louisiana Family LawChild Support, 52 La. L.Rev. 607, 608 (1992); see also Ducote v. Ducote, 339 So.2d 835 (La. 1976); Ward v. Ward, 339 So.2d 839 (La. *295 1976); Cloud v. Cloud, 276 So.2d 389 (La. App. 2 Cir.1973); Fellows v. Fellows, 267 So.2d 572 (La.App. 3 Cir.1972). In an attempt to curtail the widely divergent results such judicial discretion provided, Congress enacted legislation aimed at creating more uniform support awards. LAURA W. MORGAN, CHILD SUPPORT GUIDELINES: INTERPRETATION AND APPLICATION, § 1.01, at 1-5 (Aspen Law & Bus.1996 & Supp.1999) (hereinafter Morgan I).[2] The Child Support Enforcement Amendments of 1984 required that states establish numeric guidelines to determine appropriate amounts of child support and make these guidelines available to judicial and administrative officials charged with setting support awards. The statute stated, however, that these guidelines "need not be binding." Pub.L. No. 98-378, 98 Stat. 1305 (1984). Subsequently, Congress enacted the Family Support Act of 1988, which mandated that states establish presumptive, rather than advisory, guidelines by October 13, 1989. Pub.L. No. 100-485, 102 Stat. 2343 (1988).[3]
In response to the federal mandate, Louisiana adopted presumptive guidelines to be used in any proceeding to establish or modify child support filed on or after October 1, 1989. La. R.S. 9:315.1. The guidelines were enacted for a twofold purpose: (1) to address the inconsistency in the amounts of child support awards, and (2) to solve the problem of inadequate amounts of child support awards. Stogner v. Stogner, 98-3044, p. 6 (La.7/7/99), 739 So.2d 762, 766. The amount of support determined by the guideline formula is presumed to be in the best interest of the child. La. R.S. 9:315.1; CHRISTOPHER L. BLAKESLEY, LOUISIANA FAMILY LAW, § 1609, at 16-18 (Butterworth 1993 & Michie Supp.1997); Stogner, 98-3044 at p. 6, 739 So.2d at 766. Louisiana's guidelines utilize the income shares model to fix the appropriate level of child support. Blakesley, Louisiana Family LawChild Support, supra, at 609.[4] This approach is founded upon the tenet that a child should receive the same proportion of parental income that would have been obtained by the child if the parents had lived together. Morgan I, supra, § 1.03[b], at 1-17. The income shares model is therefore compatible with Louisiana's public policy regarding the conjoint obligation of both parents to support, maintain, and educate their children, with each parent contributing in proportion *296 to his or her resources. La. C.C. art. 227 ("Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining and educating their children."); Stogner, 98-3044 at p. 5, 739 So.2d at 766 ("The obligation to support their children is conjoint upon the parents and each must contribute in proportion to his or her resources.").
While federal law mandates that the guidelines be presumptive, the presumption is rebuttable when the circumstances presented render application of the guidelines "unjust or inappropriate." 45 C.F.R. § 302.56(g). In such cases, a court may "deviate" from the guidelines. Deviations, however, must be limited so that the utility of the guidelines as a presumptive standard is not undermined. See 45 C.F.R. § 302.56(h).[5]See also Laura W. Morgan, Deviation From State Child Support Guidelines, 7 Divorce Litig. 117, 119 (June 1995) (hereinafter Morgan II); Robert G. Williams, An Overview of Child Support Guidelines in the United States, in CHILD SUPPORT GUIDELINES: THE NEXT GENERATION 1, 4 (Margaret Campbell Haynes ed., 1994). "Limited" is generally understood to mean "the total number of support orders in which a deviation from the guidelines is made, not how many individual deviations a state provides for in the guidelines." Morgan II, supra, at 119. In any case, a state's deviation criteria "must take into consideration the best interests of the child." 45 C.F.R. § 302.56(g).
In light of the federal requirements, Louisiana enacted La. R.S. 9:315.1, which provides in part:
A. The guidelines set forth in this Part are to be used in any proceeding to establish or modify child support filed on or after October 1, 1989. There shall be a rebuttable presumption that the amount of child support obtained by use of the guidelines set forth in this Part is the proper amount of child support.
B. The court may deviate from the guidelines set forth in this Part if their application would not be in the best interest of the child or would be inequitable to the parties. The court shall give specific oral or written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application of the guidelines and the particular facts and circumstances that warranted a deviation from the guidelines. The reasons shall be made part of the record of the proceedings.
C. In determining whether to deviate from the guidelines, the court's considerations may include:
(1) That the combined adjusted gross income of the parties is not within the amounts shown on the schedule in R.S. 9:315.14. If the combined adjusted gross income of the parties is less that the lowest sum shown on the schedule, the court shall determine an amount of child support based on the facts of the case. If the combined adjusted gross income of the parties exceeds the highest sum shown on the schedule, the provisions of R.S. 9:315.10(B) shall apply.
(2) The legal obligation of a party to support dependents who are not the subject of the action before the court and who are in that party's household.
(3) The extraordinary medical expenses of a party, or extraordinary medical expenses for which a party may be responsible, not otherwise taken into consideration under the guidelines.
(4) An extraordinary community debt of the parties.

*297 (5) The need for immediate and temporary support for a child when a full hearing on the issue of support is pending but cannot be timely held. In such cases, the court at the full hearing shall use the provisions of this Part and may redetermine support without the necessity of a change of circumstances being shown.
(6) The permanent or temporary total disability of a spouse to the extent such disability diminishes his present and future earning capacity, his need to save adequately for uninsurable future medical costs, and other additional costs associated with such disability, such as transportation and mobility costs, medical expenses, and higher insurance premiums.
(7) Any other consideration which would make application of the guidelines not in the best interest of the child or children or inequitable to the parties.
Thus, although the amount of support determined by the use of the guidelines is presumed to be in the best interest of the child, this presumption can be rebutted, and a court may deviate from the level of support mandated by the guidelines, if the application of the guidelines would, in actuality, not be in the best interest of the child or would be inequitable to the parties. When deviating from the guidelines, courts must give specific reasons for the deviation, specifying the particular facts and circumstances evidencing that a deviation is warranted. Deviations should be allowed only in limited circumstances so that the function of the guidelines, which is to provide adequacy and consistency in child support awards, is preserved. See Stogner, 98-3044 at p. 7, 739 So.2d at 767 (stating the requirements of La. R.S. 9:315.1(B) serve "the function of the guidelines to provide adequacy and consistency in child support awards ... through the establishment of a method of deviation which requires the introduction of an evidentiary basis for such departure into the record").
Because the amount of child support determined by the use of the guidelines is presumptively correct, the party urging a deviation from this amount bears the burden of proving by a preponderance of the evidence that a deviation is warranted. See, e.g., Morgan I, supra, § 4.03[a], at 4-17 and cases cited therein. That is, the party advocating a deviation bears the burden of proving the guideline amount is not in the best interest of the child or would be inequitable to the parties.
In the instant case, Mr. Munn argues he is entitled to a deviation from the child support amount provided by the guidelines because he has physical custody of the parties' two children 37% of the time. In support of this argument, he cites La. R.S. 9:315.8(E), which provides:
In cases of joint custody, the court shall consider the period of time spent by the child with the nondomiciliary party as a basis for adjustment to the amount of child support to be paid during that period of time. The court shall include in such consideration the continuing expenses of the domiciliary party.
This statute contemplates a deviation from the amount of child support provided by the guidelines in certain circumstances. See Sue Nations, Family Law Symposium: Louisiana's Child Support Guidelines: A Preliminary Analysis, 50 La. L.Rev. 1057, 1080 (1990) (explaining La. R.S. 9:315.8(E) as "an instance in which the attorneys representing the parents should appeal to the judge hearing the case to deviate from the letter of the guidelines in order to reach a result that is equitable to both parties and that is also in the best interest of the child" (emphasis added)); Jane C. Venohr & Robert G. Williams, The Implementation and Periodic Review of State Child Support Guidelines, 33 Fam. L.Q. 7, 19 (Spring 1999) (noting that Louisiana treats shared parenting time as a deviation factor). Because this statute envisions the possibility *298 of a deviation from the amount of support fixed by the guidelines, Mr. Munn must prove that his having physical custody of the children for 37% of the time renders application of the guidelines not in the best interest of the children or inequitable to the parties. See La. R.S. 9:315.1(C)(7).
Louisiana's scheme does not explicitly state those circumstances in which La. R.S. 9:315.8(E) is to apply. Therefore, to understand the situations in which La. R.S. 9:315.8(E) was intended to apply, we must look to the policies underlying Louisiana's child custody and child support laws. It is presumed that the intention of the legislative branch is to achieve a consistent body of law. Stogner, 98-3044 at p. 5, 739 So.2d at 766.
The overriding consideration in child custody cases is the best interest of the child. La. C.C. art. 131; Howze v. Howze, 99-0852, p. 3 (La.5/26/99), 735 So.2d 619, 621. When joint custody is decreed, La. R.S. 9:335(A) provides that the court's implementation order shall allocate the time periods during which each parent shall have physical custody of the child in a way that assures the child of frequent and continuing contact with both parents. To ensure that the child enjoys frequent and continuing contact with both parents, La. R.S. 9:335(A)(2)(b) provides, "To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally." This point is reiterated in section B of La. R.S. 9:335, which states that although the domiciliary parent is the parent with whom the child shall primarily reside, the nondomiciliary parent shall have physical custody "during time periods that assure that the child has frequent and continuing contact with both parents." Additionally, the Legislature has provided that a parent who has not been granted custody or joint custody is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would not be in the best interest of the child. La. C.C. art. 136(A).[6] These provisions clearly contemplate that, in most cases, it is in the child's best interest to have regular contact with the nondomiciliary parent or the parent without legal custody. Thus, that children of divorced parents have continuing contact with both parents is one policy underlying Louisiana custody law.
The guidelines, which are presumed to be in the best interest of the child, must be interpreted in light of this legislative policy in order to achieve a consistent body of law. Because the statutory scheme enacted by the Legislature repeatedly provides that parents and their children should have regular contact, it is reasonable to conclude that the guideline formula must contemplate some visitation between the child and the nondomiciliary parent or the parent without legal custody. It is also reasonable to conclude that the *299 visitation contemplated by the guidelines is a "typical" amount of visitation. Such a reading is consistent with the goal of the guidelines which is to provide consistent and adequate child support awards. Were a "typical" amount of visitation not assumed by the guidelines and considered in every child support case, then, in the normal case, the same set of facts could result in varying awards in different jurisdictions. Obviously, the goal of consistency would not be achieved and some awards could be inadequate to meet the basic needs of the child. Similarly, if the guidelines did not assume a "typical" level of visitation, then in every case where visitation occurredand legislative policy favors some level of visitation or shared physical custody in the vast majority of casesa deviation from the guidelines would be required and the presumptive force of the guidelines would be rendered meaningless.
In some instances, however, a reduction in the amount of support owed to the domiciliary parent may be warranted when the nondomiciliary parent has the child for a non-typical, i.e., an extraordinary, amount of time per year. When the time a child spends with the nondomiciliary parent reaches this heightened level, the parents are generally said to be in a "shared custody" or "extraordinary visitation" arrangement. Laura W. Morgan, Child Support Guidelines and the Shared Custody Dilemma, 10 Divorce Litig. 213 (November 1998) (hereinafter Morgan III).[7] In shared custody or extraordinary visitation situations, the nondomiciliary parent's increased time with the child increases his or her direct child-related expenses. Karen A. Getman, Changing Formulas for Changing Families: Shared Custody Must Not Shortchange Children, 10 Fam. Advocate 47 (Winter 1988). Nevertheless, this does not mean that the domiciliary parent's expenses decrease for every dollar the nondomiciliary parent pays in expenses. Morgan I, supra, § 3.03[a], at 3-27. Instead, there is an increase in the total expenditures made on the child's behalf. Id.; Getman, supra, at 48. This is due to the fact that each parent pays "redundant costs," those fixed expenses that both parents must pay, such as housing expenses, utilities, a bedroom for the child, and toys. Morgan I, supra, § 3.03[a], at 3-28. These fixed expenses are not affected by where the child sleeps. Getman, supra. It is estimated that it costs 50% more to provide two households for a child than to provide one because of these redundant costs. Czapanskiy, supra, at 46.
In order to deal with this anomalous situation, La. R.S. 9:315.8(E) gives the court discretion in determining whether to allow a deviation in shared custody or extraordinary visitation situations.[8] A plain *300 reading of the statute in the context of the complete child support scheme reveals the Legislature intended that courts balance the interest of both parties, i.e., the economic impact of shared custody on both parents, in considering whether to deviate from the guidelines in shared custody or extraordinary visitation situations.[9] In considering these unique situations, judges must recognize that shared custody or extraordinary visitation arrangements are more expensive, perhaps significantly so, than traditional visitation arrangements. They must ensure that any deviation from the guidelines will not result in the domiciliary parent's inability to adequately provide for the child.
We note the Legislature has given the trial court wide discretion in cases dealing with shared custody to allow it to deal with the myriad of circumstances that may occur in these cases. For example, it is possible that extraordinary visitation only take place during certain discrete periods of time. In these cases, for example during summer visitation or extended holiday visitation, the trial court is given latitude and may order a reduction in child support payments only during these periods. This is made clear by La. R.S. 9:315.8(E) which states that the trial court may adjust the amount of child support to be paid "during that period of time" the child spends with the nondomiciliary party. It is only when the extraordinary visitation or shared custody occurs regularly throughout the year that trial courts should reduce the child support obligation in every month.
Jurisdictions in which adjustments in support for shared custody or extraordinary visitation situations are seen as deviation factors have developed a two-part test to assist judges in considering whether to deviate from the guidelines. First, the court must determine whether the visitation is in fact extraordinary. Visitation that is barely more than "typical" will usually not be considered extraordinary visitation warranting deviation. Second, the court must consider whether the extra time spent with the nondomiciliary parent results in a greater financial burden on that parent and in a concomitant lesser financial burden on the custodial parent. See Morgan I, supra, § 3.03[d], at 3-37 through 3-38 and cases cited therein. Because we find this test accurately reflects the considerations involved in determining whether to deviate from the guidelines in shared custody or extraordinary visitation situations and because it furthers public policy and the legislature's intent in enacting La. R.S. 9:315.8(E), we hereby adopt this test for use in considering whether a shared custody or extraordinary visitation situation warrants deviation.
We must, however, add a third prong to this test. That is, the court must determine that the application of the guidelines in the particular case under consideration would not be in the best interest of the child or would be inequitable to the parties. This prong is necessary to satisfy the deviation requirement of La. R.S. 9:315.1(B).
Essentially, the test as formulated above is to be used to assist judges in performing the balancing of economic burdens contemplated by La. R.S. 9:315.8(E). In applying this test, there is no bright line rule as to what constitutes extraordinary visitation as opposed to "typical" visitation. *301 Rather, the application of this prong falls within the great discretion of the trial court. Similarly, there is no bright line rule related to the amount of deviation that is acceptable. That determination, too, falls within the great discretion of the trial court. It must be reiterated, however, that the "typical visitation" arrangement has already been factored into the guideline formula. "Where a court does decide to deviate because of the presence of a shared custody arrangement, the court must deviate only to the extent not assumed in the statute." Morgan II, supra, at 129.
In light of the foregoing discussion, we must find that the trial judge abused his discretion in reducing Mr. Munn's child support obligation by 30% for the 37% of time his children spend with him. First, the record contains no basis for the trial court's consideration of the financial burdens imposed on each parent as a result of the amount of time each spends with the children. As such, the trial court could not have performed the balancing test contemplated by La. R.S. 9:315.8(E). Second, even if the trial court had adequately considered the requirements of La. R.S. 9:315.8(E), he failed to "give specific oral or written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application of the guidelines and the particular facts and circumstances that warranted a deviation from the guidelines" as mandated by La. R.S. 9:315.1(B). Third, assuming arguendo a deviation from the guidelines is warranted under the circumstances presented, a point upon which we express no opinion at this juncture, a reduction of 30% in this case fails to take into account the "typical visitation" allowance included in the guidelines and is therefore excessive. For all the above reasons, we find the trial court abused its discretion in reducing Mr. Munn's child support obligation by 30% and therefore reverse its judgment in this regard and remand this case to the trial court for further proceedings consistent with this opinion.
We note the parties have raised additional issues in this case, including the calculation of arrearages and assessment of costs, and we express no opinion as to these issues since the trial court's ultimate conclusion may affect their resolution. The trial court should address these issues on remand and should consider the provisions of La. R.S. 9:315.21, which provides in pertinent part:
C. Except for good cause shown, a judgment modifying or revoking a final child support judgment shall be retroactive to the date of judicial demand.
Thus, as this provision makes clear, the trial court should either make the appropriate award retroactive to the date of judicial demand or demonstrate on the record the reasons such an order is not made. Because the trial court must engage in these considerations on remand, the judgments of the lower courts relative to these remaining issues are vacated.

DECREE
For the reasons assigned herein, the judgments of the lower courts are reversed insofar as they set Mr. Munn's child support obligation in the amount of $474.00 per month. We vacate and set aside the lower courts' judgments as to the remaining issues. The case is remanded to the trial court with the following instructions. In keeping with the codal dictate that the paramount consideration in child support proceedings is the best interest of the child and considering the amount of time this case has spent in the judicial system, this court in exercising its supervisory jurisdiction orders that on remand this case shall proceed expeditiously and within the following time frames to the extent practicable: (1) the trial court shall proceed with this rule consistent with this opinion and render a judgment within twenty days after the expiration of time delays for filing an application for rehearing in this court or after the disposition of *302 an application for rehearing should one be filed; (2) the trial court shall set the return day of the appeal, should one be requested, no more than fifteen days from the signing of said judgment or from the mailing of notice of the judgment, if required; and (3) in this event, the court of appeal shall decide the appeal within twenty days of the lodging of the record on appeal by assigning it for expeditious treatment with preference and priority.
REVERSED IN PART; VACATED IN PART and REMANDED FOR EXPEDITED HEARING.
JOHNSON and VICTORY, JJ., dissented and assigned reasons.
LEMMON, J., subscribes to the opinion and will assign additional reasons.
JOHNSON, J., dissenting.
With child support and child custody issues, the time factor is the most crucial element. Here, in the year 2000, we are still trying to determine a support amount in a Rule to Reduce Child Support that was filed in 1994. Six years is too long to litigate the amount of child support due for the support of minor children.
Louisiana established child support guidelines as mandated by the federal government so that children would have some immediacy and consistency in a monthly support amount. We defeat that purpose if judges try to achieve mathematical certainty throughout a child's minority.
This is why we must give deference to the trial judge, absent manifest error. La. R.S. 9:315.12.1 makes it clear:
Deviations by the trial court from the guidelines set forth in this Part shall not be disturbed absent a finding of manifest error.
Courts have found that deviations by a trial court from child support guidelines are not to be disturbed absent a finding of manifest error; however, in order to deviate from the child support guidelines, the record must contain oral or written reasons for the deviation, which are supported by the record. Montou v. Montou, 96-1463 (La.App. 3 Cir. 4/2/97), 692 So.2d 705; McDaniel v. McDaniel, 95-1314 (La.App. 3 Cir. 3/6/96), 670 So.2d 767.
The record supports the trial court's decision to deviate from the child support guidelines granting the reduction in support. LSA-R.S. 9:315.1 provides, in pertinent part:
C. In determining whether to deviate from the guidelines, the court's consideration may include:
* * *
(2) The legal obligation of a party to support dependents who are not the subject of the action before the court and who are in that party's household.
In support of his motion to reduce child support, the father presented evidence that he and his current wife have had another child since the original judgment awarding child support. Apparently, the new child lives in the father's household, and without question, the father is legally obligated to support the child. Furthermore, the record supports the father's allegation that child care costs for the two sons he had with Mrs. Guillot have significantly decreased since the original award, from $300.00 per month to $90.00 per month. Therefore, it does not appear that the trial court was manifestly erroneous or clearly wrong in reducing the child support award.
Accordingly, I would affirm the child support award of Four Hundred Seventy-four dollars ($474.00) per month, give the trial court discretion on how to calculate the amount in arrears, determine whether legal interest is due on the arrearages, and affirm the trial court's decision that each party is to bear his/her own costs.
For all of the above reasons, I respectfully dissent.
*303 VICTORY, J., dissenting.
"Legislation is a solemn expression of legislative will." La. C.C. art. 2. No matter how strenuously judges might disagree with the law passed by the legislature, we are not free to simply disregard the law as clearly expressed by the legislature in an attempt to do what we think is right. Therefore, I cannot agree with the majority opinion which essentially rewrites the provisions of La. R.S. 9:315.8(E), resulting in the adoption of a test that, until today, was not part of our law. In reaching its result, the majority ignores the mandatory principles of statutory construction, i.e, that "[t]he words of law must be given their general prevailing meaning" and that "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." Yet, the majority goes even further and replaces the term "joint custody" in La. R.S. 9:315.8(E) with "shared custody" or "extraordinary visitation," while at the same time recognizing that "[i]n Louisiana, however, the terms shared custody and extraordinary visitation do not appear in our statutes." Op. at p. 299, n. 7.
In concluding that the nondomiciliary parent's share of the total child support obligation cannot be adjusted unless the child spends more than a "typical" amount of visitation with the nondomiciliary parent, the majority makes three major legal errors. The majority's first error is holding that La. R.S. 9:315.8(E) is a deviation from the guidelines as contemplated in La. R.S. 9:315.1, and accordingly, that the trial court must undertake the analysis required for deviations under La. R.S. 9:315.1(B). The majority's second error is holding that the "`typical visitation' arrangement has already been factored into the guideline formula," Op. at p. 301, and thus the court can only adjust the child support if the nondomiciliary parent has "shared custody" or "extraordinary visitation." The majority's third error is holding that while La. R.S. 9:315.8(E) "purports to apply `in cases of joint custody'... when read in context, the statute is intended to apply only in those cases where the parents share physical custody rather than only in those cases of joint legal custody." Op. at p. 299, n. 8. A simple application of La.R.S. 9:315.8(E) as written would have rendered all the above findings unnecessary.[1]
As correctly stated by the majority, Louisiana's Child Support Guidelines, found at La. R.S. 9:315-9:315.15, were adopted in response to the Family Support Act of 1988, Pub.L. No. 100-485, 102 Stat. 2343 (1988), which mandated that states enact presumptive guidelines to be used in any proceeding to establish or modify child support. Christopher L. Blakesley, Louisiana Family Law, 52 La. L.Rev. 607, 609, and n. 18 (1992). Louisiana chose the Income Shares Model to fix the appropriate level of child support, which as of 1998, is also used by 32 other states. Jane C. Venohr and Robert G. Williams, The Implementation and Periodic Review of State Child Support Guidelines, 33 Fam. L.Q. 7, 19 (1999). Robert Williams, a member of the Advisory Panel that developed the prototype of the Income Shares Model and author of the Louisiana guidelines, explained that in the Income Shares Model, the "estimate of actual child-rearing expenditures in an intact family forms the basic child care obligation," which amount is found in our law at the chart in La. R.S. 3:315.14. Id. at 12. This model was chosen by the Louisiana Legislature because "it starts with the premise that both parents have the obligation to support the child." House Bill 18, Senate *304 Committee on Judiciary A, Minutes on July 9, 1989, p. 14.
Louisiana's guidelines were enacted by House Bill 18 of the 2nd Extraordinary Session of 1989 effective October 1, 1989, as La. R.S. 9:315-315.15. La.R.S. 9:315.1(A) contains the general federally mandated provisions that the guidelines, are to be used and that "there shall be a rebuttable presumption that the amount of child support obtained by use of the guidelines set forth in this Part is the proper amount of child support." La. R.S. 9:315.2-7 of the guidelines address the following: the method of calculating the basic child care obligation, La. R.S. 9:315.2; the addition of net child care costs, health insurance premiums, extraordinary medical expenses and other expenses to the basic child care obligation, La. R.S. 9:315.3-6; and, the deduction of income of the child from the basic child care obligation, La. R.S. 9:315.7.
La. R.S. 9:315.8 provides the method of calculating each party's share of the "total child support obligation." That statute provides that the court first determine the basic child support obligation amount, according to the chart found at La. R.S. 9:315.14, and then add to that amount the net child care costs, the cost of health insurance premiums, extraordinary medical expenses, and other extraordinary expenses, and then subtract from that amount any income of the child, all found at La. R.S. 9:315.2-7. The resulting amount is the "total child support obligation." La. R.S. 9:315.8(A-B). To determine each party's share of the total child support obligation, each party's percentage share of the combined adjusted gross income is multiplied by the total child support obligation. La. R.S. 9:315.8(C). The party without legal custody or the nondomiciliary party owes his or her amount as a money judgment to the custodial or domiciliary party. La. R.S. 9:315.8(D). Finally, "[i]n cases of joint custody, the court shall consider the period of time spent by the child with the nondomiciliary party as a basis for adjustment to the amount of child support to be paid during that time." La. R.S. 9:315.8(E) (emphasis added). This adjustment is part of the normal procedure in determining each party's share of the total child support obligation under La. R.S. 9:315.8 in joint custody cases.
After determining each party's share of the total child support obligation, including a possible adjustment under La. R.S. 9:315.8(E), the court must then consider any deviations, which are found in an entirely different section of the guidelines. That provision, La. R.S. 9:315.1(C), contains a specific listing of the types of circumstances that may warrant a deviation from the guidelines, and the time a child spends with the nondomiciliary parent is not one of them.[2] If a court finds one of *305 the enumerated conditions to be present, he may deviate from the guidelines if the requirements of La. R.S. 9:315.1(B) are met. That section provides:
The court may deviate from the guidelines set forth in this Part if their application would not be in the best interest of the child or would be inequitable to the parties. The court shall give specific oral or written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application of the guidelines and the particular facts and circumstances that warranted a deviation from the guidelines. The reasons shall be made part of the record of the proceedings.
La. R.S. 9:315.1(B). These requirements only apply where the court is deviating from the guidelines in accordance with one of the listed provisions of La. R.S. 9:315.1(C). The amount of time spent with the nondomiciliary parent under a joint custody decree is not a deviation from the guidelines because it is not listed in La. R.S. 9:315.1(C). Instead, as specifically stated in La. R.S. 9:315.8(E), it is a normal adjustment to be considered in determining a party's share of the total child support obligation in all joint custody cases, from which amount deviations may then be made under La. R.S. 9:315.1. Because it is not a deviation, the majority has erred in holding that the requirements of La. R.S. 9:315.1(B) apply.
The majority's second legal error is its finding that the typical visitation arrangement has already been factored into the guideline formula, and thus the court may only adjust the child support if the nondomiciliary parent has "shared custody" or "extraordinary visitation."[3] However, there is no indication in any Louisiana source material that a "typical visitation" arrangement has already been factored into Louisiana's child support guidelines or that the legislature intended the statute to apply only in cases of "shared custody" or "extraordinary" visitation.
To the contrary, a review of the legislative history of La. R.S. 9:315-315.15 proves otherwise. The draft statute for implementing Louisiana's child support guidelines was written by Robert Williams and was presented to the legislative committee as House Bill 1383. In a letter to Jerry Jones, the attorney for the Committee on Civil Law and Procedure, Williams explained the factors considered and adjustments made in building the tables contained in the statute, and found now at La. R.S. 9:315.14.[4] Significantly, there is no mention of a deduction built into the numbers on the chart to account for an assumption that a child will spend a certain amount of his or her time with the nondomiciliary parent. Had such a significant deduction been factored into the table as La. R.S. 9:315.14, Williams would surely have made the legislature aware of this in his explanatory letter. Further, the mere fact that the chart contained in the income *306 shares model is based on the amount it would take to raise the child or children in one intact household suggests that the amount has not been discounted to take into account a nondomiciliary parent's "typical" visitation with his or her child. Venohr and Williams, supra at p. 12.
House Bill 1383 was distinguishable from the bill that enacted our present guidelines, House Bill 18, in that House Bill 1383 contained a special definition of "joint physical custody" at proposed section 9:315(7) to mean that "each parent keeps the child overnight for more than twenty-five percent of the year, and that both parents contribute to the expenses of the child in addition to the payment of child support." It then contained proposed section 9:315.9 which provided for the calculation of the total child support obligation in these "joint physical custody" situations.[5] In House Bill 1383, the worksheet at proposed section 9:315.15 contained worksheet A, for sole custody (which is the one in the present law) to be used in cases of less than 25% custody, and worksheet B, for joint physical custody, and worksheet C, for adjustments under joint physical custody.
This bill died in committee during the 1989 regular legislative session and House Bill 18 was introduced in the 2nd Extraordinary Session of 1989. In House Bill 18, the provisions above for joint physical custody are removed and House Bill 18 contains the present La. R.S. 9:315.8(E), which provides generally that "[i]n cases of joint custody, the trial court shall consider the time spent with the nondomiciliary parent as a basis for adjustment to the amount of child support to be paid during that period of time." Thus, the legislature explicitly rejected the "joint physical custody" provisions that the majority now claims are built into our present guidelines. Further, if our guideline numbers already had built into them an adjustment for the period spent with the nondomiciliary parent, there would have been no need for the legislature to mandate that the trial court consider an adjustment found in La. R.S. 9:315.8(E) in cases of joint custody.
The Senate Committee Minutes on House Bill 18 also provide significant insight into the intent of the legislature in enacting House Bill 18, instead of the complicated formula for "joint physical custody" in House Bill 1383. One member expressed his concern that there was no provision in House Bill 18 for reducing his child support payments because he only had his children on weekends and three weeks in the summer and he understood that the bill provided reductions for "extended periods" only. Sen. Bradley, the author of House Bill 18, explained to him that "a House amendment had removed the word `extended' from the bill, and the period of time the child is with each party will be taken into consideration." Senate Committee on Judiciary A, Minutes of Meeting of July 9, 1989, p. 14. Senator Bradley later explained that "we also adjusted the area of the bill, ..., the section that deals with joint custody, we basically *307 just said that in that situation that the court can consider the amount of time spent by the child with the non-custodial parent as a grounds for adjustment." Id. at p. 17. "The original bill was filed during the regular session and we could not get it scheduled for hearing because of the threatened abbreviated session, which turned out not to be abbreviated. That bill was much more complicated than this and it had a whole very complicated section on joint custody, which we Xed that second worksheet out and...." Id. at p. 18.
Thus, both the legislative history of House Bill 1383 and 18, and the material provided to the legislature by the drafter of the statutes, Robert Williams, clearly indicate that there is no built-in deduction in the amounts found in the chart at La. R.S 9:315.14 for the amount of time that the child will spend with the nondomiciliary parent. The legislature clearly rejected the complicated formula for computing child support in situations involving the uniquely defined "joint physical custody" found in House Bill 1383 for the discretionary standard found in House Bill 18, which as explained by the author of the bill, allows the court to consider the amount of time spent by the child with the nondomiciliary parent as a grounds for adjustment, with no "extended" custody required. Instead of being built into our guidelines, any adjustment for the time spent with the nondomiciliary parent is at the discretion of the trial court. While some states may have a built-in reduction in their child support guidelines to account for "typical visitation" by the noncustodial spouse, that reduction is not universal to all child support guidelines and is certainly not contained in Louisiana's guidelines as evidenced by the legislative history.[6]See Marygold S. Melli, Guideline Review: Child Support and Time Sharing by Parents, 33 Fam. L.Q. 219 (1999); Robert G. Williams and David Price, Analysis of Selected Factors Relating to Child Support Guidelines, (Jan. 19, 1993), pp. 16-17 and Table 2 (surveying the states using the Income Shares approach and comparing the varying levels of visitation that qualify for an adjustment in the different states). The clear language of La. R.S. 9:315.8(E) shows that there is no built in reduction in our guidelines. If the reduction had been built into our guidelines, there would be no need for La. R.S. 9:315.8(E).
The majority's third error is rewriting La. R.S. 9:315.8(E) by holding that although "[t]he statute purports to apply `in cases of joint custody' ... [c]learly, however, when read in context, the statute is intended to apply only in those cases where the parents share physical custody rather than only in those cases of joint legal custody." Op. at p. 299, n. 8. Contrary to the majority's assertion that "Louisiana's scheme does not explicitly state those circumstances in which La. R.S. 9:315.8(E) is to apply," Op. at p. 298, La. R.S. 9:315.8(E) explicitly states that it applies "in cases of joint custody." La. R.S. 9:315.8(E).
"Joint custody" has had a well-understood and particularized meaning under Louisiana law for decades. La. R.S. 9:335 specifically deals with "joint custody" decrees and implementation orders and provides standards governing physical custody and legal authority and responsibility for the child or children. The provisions defining "joint custody" do not require a child to spend a predetermined amount of time with each parent. Rather, the time spent with each parent is determined on a case-by-case basis so that each parent is assured of frequent and continuing contact with both parents and "to the extent it is feasible and in the best interest of the *308 child, physical custody of the children should be shared equally." La. R.S. 9:335(A)(2)(a)(b). Had the Legislature intended that La. R.S. 9:315.8(E) only apply to joint custody situations where the nondomiciliary parent had physical custody of the child for extraordinary amounts of time, it would not have made La. R.S. 9:315.8(E) applicable "[i]n cases of joint custody."
In addition to the clear wording of La. R.S. 9:315.8(E), other laws on point make clear that when the legislature said "in cases of joint custody," that is just what it meant. Civil Code article 141 provides the general authority for a court to award child support. Revision Comment (c) explains the awarding of child support as follows:
"Under R.S. 9:315.8(C), the share of the total cost of child support for which each parent is responsible is proportional to his percentage share of the total income of both parents. Thus, one parent can be ordered to pay substantially more than the other when he can afford to do so, and such an order is necessary to afford the child the requisite standard of living. Such an order is particularly appropriate when sole, rather than joint custody is ordered. See Comment (e) infra; Cox v. Cox, 447 So.2d 578 (La. App. 1st Cir.1984). Similarly, under R.S. 9:315.8(E), a court may adjust a child support award downward to reflect time spent by the child living in the home of the payor. Accord: Flournoy v. Flournoy, 546 So.2d 617, 621 (La.App. 3d Cir.1989) (under prior, jurisprudential, law). And under R.S. 9:337[7] (this revision), a court may, in or in conjunction with a joint custody implementation order, make a special monetary award to one spouse in order to enable that spouse to maintain adequate housing for a child."
Again, in this explanation of La. R.S. 9:315.8(E), there is no caveat that the time with the nondomiciliary can only be considered when it is extraordinary.
Further, La. C.C. art. 141 states: "[a]n award of child support may be modified if the circumstances of the child or of either parent change and shall be terminated upon proof that it has become necessary." Revision Comment (d) provides:
Under this Article, whenever a sole custody arrangement is changed to joint custody, the court may consider reducing the child support entitlement of the former sole custodian, provided that the change in the legal situation gives rise to an actual change of circumstances sufficient to justify doing so. See, R.S. 9:315.8(E); Chaudoir v. Chaudoir, 454 So.2d 895 (La.App. 3d Cir.1984); Plemer v. Plemer, 436 So.2d 1348 (La.App. 4th Cir.1983). Compare former C.C. Art. 131(A)(1)(c)(i): "An award of joint custody shall not eliminate the responsibility for child support."
According to the comment, the change of circumstance necessary to bring La. R.S. 9:315.8(E) into play is a change from sole to joint custody, with no preset amount of visitation required in the joint custody arrangement before La. R.S. 9:315.8(E) will be applicable.
It is clear, however, that any adjustment made under La. R.S. 9:315.8(E) is discretionary and the court should only consider added expenses, such as food, entertainment, and transportation costs, etc., paid by the nondomiciliary parent during the period of time the child is with him or her. Further, the legislature mandated that the court also consider the continuing expenses of the domiciliary parent, i.e., those expenses that the domiciliary parent will still have to incur even when the child is *309 with the nondomiciliary parent. For example, if the nondomiciliary parent pays the domiciliary parent $1000.00 per month and has custody of the child for three months out of the year, or 25% of the time, the trial court must consider adjusting the support paid by the nondomiciliary parent during those three months under La. R.S. 9:315.8(E). The trial judge may, but is not required to, reduce the amount paid for non-continuing expenses that will have to paid by the nondomiciliary parent, instead of the domiciliary parent, during that time. If the nondomiciliary parent presents evidence that during those three months he will have to pay $200.00 extra per month for the child's food, entertainment, and transportation, etc., the trial judge has the discretion to reduce his payment by a maximum of $200.00 for each of those three months, but only after considering the continuing expenses of the domiciliary parent. Clearly, the statute was not intended to authorize a specific percentage reduction in the total amount of child support that corresponds to the amount of time spent with the nondomiciliary parent, i.e., a 25% reduction in all monthly payments because the nondomiciliary parent has the child 25% of the year.
In my view, the trial court should not have adjusted the $640.00 per month child support award reached in a stipulated judgment on November 5, 1993 on the basis that the children spend 37% of their time with the father. As I understand it, it was estimated that the children would spend 37% of their time with the father when he entered into the stipulated judgment and this circumstance has remained unchanged. Thus, the only factors the trial judge should have considered were the two actual changes in circumstances, namely, that the child care costs for the children had been reduced from $300.00 per month to $90.00 per month and that he and his new wife had a child in December of 1993.
For all of the above reasons, I respectfully dissent.
NOTES
[*] CALOGERO, C.J., not on panel. See Rule IV, Part 2, § 3.
[1] In ordering these arrearages, the trial court explained that in calculating the reduction in support based on the time the children spent with Mr. Munn in its initial support order, it subtracted $184.00 from $497.72 and mistakenly concluded the difference was $226.00. It then erroneously ordered that Mr. Munn pay Ms. Guillot $226.00 per month commencing on September 1, 1994. In its amended reasons for judgment, the trial court recognized that $184.00 subtracted from $497.72 resulted in a difference of $313.72 and this was the amount Mr. Munn should have been paying Ms. Guillot beginning September 1, 1994. Thus, the trial court ordered that the past due amount of $2,456.00 was owed to Ms. Guillot.
[2] In her treatise on child support guidelines, Laura Morgan explains the five major problems with child support awards prior to the widespread enactment of the guidelines. First, many parents received no child support awards whatsoever even though they were entitled to awards. Second, when child support was ordered, it was often inadequate. Third, studies showed that the awards were inconsistent. Fourth, obligors developed disrespect for courts' support orders as a direct result of the inconsistency of such orders which, in turn, caused parents to forego their support obligations. Fifth, settlements were rare because neither parent could accurately predict what a court would order and this caused pressure on courts' dockets. These problems directly concerned the federal government because its Aid to Families with Dependent Children program helped those families whose support was inadequate or absent. Morgan I, supra, § 1.01, at 1-3 through 1-5.
[3] The federal government sought to achieve three broad objectives in mandating the establishment of presumptive guidelines:

(1) To enhance the adequacy of orders for child support by making them more consistent with economic evidence on the costs of child rearing;
(2) To improve the equity of orders by assuring more comparable treatment for cases with similar circumstances; and
(3) To improve the efficiency of adjudicating child support orders by encouraging voluntary settlements and reducing the hearing time required to resolve contested cases.
Robert G. Williams, An Overview of Child Support Guidelines in the United States, in CHILD SUPPORT GUIDELINES: THE NEXT GENERATION 1 (Margaret Campbell Haynes ed., 1994).
[4] The income shares model has been adopted, in one form or another, in a majority of states. Nancy S. Erickson, Child Support Guidelines: A Primer, 27 Clearinghouse Rev. 734, 736 (November 1993) (stating that "[o]ne version or another of the income shares model has been adopted in 31 states and Guam").
[5] 45 C.F.R. § 302.56(h) requires that deviations from the guidelines be "limited." It provides:

As part of the review of a State's guidelines required under paragraph (e) of this section, a State must consider economic data on the cost of raising children and analyze case data, gathered through sampling or other methods, on the application of, and deviations from, the guidelines. The analysis of the data must be used in the State's review of the guidelines to ensure that deviations from the guidelines are limited.
(emphasis added).
[6] Prior to the enactment of these articles, which were effective January 1, 1994, the idea of frequent and continuing contact with both parents was clearly established in Louisiana law. Old Civil Code Article 146(A)(2) provided, "In making an order for custody for either parent, the court shall consider, among other factors, which parent is more likely to allow the child or children frequent and continuing contact with the noncustodial parent...." Furthermore, section D of that article provided, "For purposes of this Article, `joint custody' shall mean the parents shall, to the extent feasible, share the physical custody of children of the marriage.... Physical care and custody shall be shared by the parents in such a way as to assure a child of frequent and continuing contact with both parents." Additionally, at least one circuit court of appeal recognized "[t]he legislative policy underlying the presumption that joint custody is in the best interest of the child is that a child needs frequent and continuing contact with both parents." Hull v. Hull, 499 So.2d 1037, 1039 (La.App. 3 Cir.1986). See also Daugherty v. Cromwell, 501 So.2d 955, 956 (La.App. 2 Cir.1987) (noting that joint custody shall be "done in a manner to assure a child of frequent and continuing contact with both parents"); Foy v. Foy, 505 So.2d 850 (La.App. 2 Cir.1987) (holding that the trial court's judgment, although characterized as joint custody, denied the mother frequent and continuing physical contact with her sons and remanding the case for consideration "of a more meaningful joint custody plan").
[7] In some jurisdictions, shared custody and extraordinary visitation are treated differently for purposes of determining the amount of child support owed. For example, in Hawaii, Kansas, and New Mexico, shared custody is defined as the situation in which a child spends "substantially equal" amounts of time with each parent. If the shared custody test is met, then guidelines provide for a specific calculation of the support obligation that is different than that of sole custody. If, however, visitation occurs in excess of 30% but less than 50%, the situation is in the nature of extraordinary visitation and an adjustment in child support is given. Morgan III, supra. In Louisiana, however, the terms shared custody and extraordinary visitation do not appear in our statutes. Instead, a deviation is allowed for non-typical amounts of time the child spends with the nondomiciliary party. In this instance, the analysis is the same whether the situation is one involving shared custody or extraordinary visitation. See Morgan I, supra, § 3-03[a][iii], at 3-32 through 3-33 (stating that the method of determining child support when shared custody is viewed as a deviation factor is indistinguishable from that used when a deviation is based on extraordinary visitation). For this reason, the terms are used interchangeably throughout this opinion.
[8] The statute purports to apply "in cases of joint custody." Clearly, however, when read in context, the statute is intended to apply in those cases where the parents share physical custody rather than only in those cases of joint legal custody. If this statute were read to apply only in those cases of legal joint custody, then parents without legal custody who exercise significant amounts of visitation would not be afforded the opportunity to request a deviation for the amount of time spent with the children. Such a result would be absurd and we can discern no reason the legislature might have chosen to treat these parents differently from nondomiciliary parents.
[9] Although many states use a specific formula to compute child support awards in these situations, see Morgan I, supra, § 3.03, at 3-27 through 3-40, Louisiana has rejected these approaches as being "difficult to understand and equally difficult to apply." Sue Nations, Family Law Symposium: Louisiana's Child Support Guidelines: A Preliminary Analysis, 50 La. L.Rev. 1057, 1080 (1990).
[1] La. R.S. 9:315.8(E) provides: "In cases of joint custody, the court shall consider the period of time spent by the child with the nondomiciliary party as a basis for adjustment to the amount of child support to be paid during that period of time. The court shall include in such consideration the continuing expenses of the domiciliary party."
[2] La. R.S. 9:315.1(C) provides:

In determining whether to deviate from the guidelines, the court's considerations may include:
(1) That the combined adjusted gross income of the parties is not within the amounts shown on the schedule in R.S. 9:315.14. If the combined adjusted gross income of the parties is less than the lowest sum shown on the schedule, the court shall determine an amount of child support based on the facts of the case. If the combined adjusted gross income of the parties exceeds the highest sum shown on the schedule, the provisions of R.S. 9:315.10(B) shall apply.
(2) The legal obligation of a party to support dependents who are not the subject of the action before the court and who are in that party's household.
(3) The extraordinary medical expenses of a party, or extraordinary medical expenses for which a party may be responsible, not otherwise taken into consideration under the guidelines.
(4) An extraordinary community debt of the parties.
(5) The need for immediate and temporary support for a child when a full hearing on the issue of support is pending but cannot be timely held. In such cases, the court at the full hearing shall use the provisions of this Part and may redetermine support without the necessity of a change of circumstances being shown.
(6) The permanent or temporary total disability of a spouse to the extent such disability diminishes his present and future earning capacity, his need to save adequately for uninsurable future medical costs, and other additional costs associated with such disability, such as transportation and mobility costs, medical expenses, and higher insurance premiums.
(7) Any other consideration which would make application of the guidelines not in the best interest of the child or children or inequitable to the parties.
[3] That the majority is in error is bolstered by the wording of La.R.S. 9:315.8(E), which mandates that the trial court consider an "adjustment" for time spent with the nondomiciliary parent in all joint custody cases. Yet the majority concludes that the trial court can only "deviate" when the nondomiciliary parent meets a three part test, not even mentioned in the guidelines.
[4] Such factors included Louisiana's income distribution, net and gross income, adjustments of Earned Income Tax Credit and Social Security, a self-support reserve of $498 per month which is built into the table, and an adjustment to basic support to ensure that support increases slightly as the number of children needing support increases.
[5] In such situations, the basic child support obligation was to be multiplied by 1.5, to reach the shared custody basic obligation amount, and the percentage of time each party spends with the child would be obtained by the number of nights the child spends with each parent. If this figure was less than 25%, this section would not apply and the child support obligation would be figured in the normal way. If it was greater than 25 %, the theoretical child support obligation for each party would be obtained by multiplying his percentage share of income times the shared custody basic obligation amount. Then the basic child support obligation for time with the other party shall be obtained by multiplying the percentage of time spent by the child with each party times the other party's amount of theoretical child support obligation. All child care expenses are then added together and multiplied by each parties' percentage share of adjusted gross income. Finally, each party's child support obligation is then obtained by adding his basic child support obligation for time with the other parent together with his share of total additional expenses. After all this, the party owing the greater amount owes the other party the difference between the two amounts and this is paid as a money judgment.
[6] Further, if such a reduction were built into the Louisiana guidelines, then a nondomiciliary parent who never had physical custody of the children would have to pay more than the guidelines provide to make up for the short-fall that the majority asserts is built into the guidelines. However, there is clearly no provision for this in the law, but none is needed, as there indeed is no visitation assumption built into the guidelines.
[7] La. R.S. 9:337 Joint custody decree or implementation order; child support provisions

A. A joint custody decree or implementation order may include in the sum awarded for child support a portion of the housing expenses of a parent even for a period when the child is not residing in the home of that parent, if that parent would otherwise be unable to maintain adequate housing for the child.