# NOT FOR PUBLICATION

## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 19-128

**STATE OF LOUISIANA**

**VERSUS**

**AVERY DICKENS, II**

\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. S-2017-036
HONORABLE E. DAVID DESHOTELS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*

## SYLVIA R. COOKS
### JUDGE
\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Shannon J. Gremillion, and Van H. Kyzar, Judges.

**AFFIRMED.**

**H. Todd Nesom**
**Rod Bertrand**
**Allen Parish District Attorney's Office**
**P.O. Box 839**
**Oberlin, LA 70655**
**(337) 639-2641**
**COUNSEL FOR APPELLEE:**
    State of Louisiana

**John Richardson**
**Richardson & Guarisco, LLC**
**344 East 6th Avenue**
**Oakdale, LA 71463**
**(318) 335-9857**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    Avery Jenkins, II

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

Defendant, Avery Dickens, II, and Stacie Lynn Whatley had a daughter together. On November 29, 2017, a stipulated judgment was entered into decreeing that the parents share joint custody, with Stacie designated as the domiciliary parent. It was also ordered that Avery pay child support in the amount of $1,894.06 per month for the minor child.

Alleging he sustained a significant drop in his income, Avery requested a modification of the amount of child support he was required to pay. A hearing on the request for modification was held on July 25, 2018, with both parents appearing at the hearing.

Summer Perron, a Support Enforcement Services case worker, testified that Avery's current income with his new employer was $4,680.00 per month. She stated Avery had provided verification that he had enrolled the child in health, dental and vision insurance. After factoring the insurance coverage into the support worksheets, she stated the child support worksheets showed a recommended support figure of $675.00 per month. Ms. Perron did note there was some dispute about Avery's previous employment.

The trial court questioned Avery at length regarding his past and current incomes, including the following exchange:

> THE COURT: All right. And so you were the owner of a company six months ago or seven months ago that your father was involved with?
>
> MR. DICKENS: He was the actual, I guess you could call it bread-winner of the - - or the primary of the company.
>
> THE COURT: Why wasn't he the owner of the company since he was the one who was calling the shots and running the company?
>
> MR. DICKENS: Because of an issue with his ex-wife.
>
> THE COURT: There we go.

MR. DICKENS: And it wasn't child support related. His child support was basically the same as mine, which we paid - -

THE COURT: All right. So after this award of eighteen hundred dollars per month, within a few months after that you and your dad switched things back around. And now you are earning a lot less money. Is that what you are saying?

MR. DICKENS: No, Your Honor. That is what I was trying to explain. That process was started two years prior, or it was attempted to get started, the transferring of the business back into my father's name, was attempted to get started.

THE COURT: And what kind of income - - do you have 1099s or W-2s or other tax forms that show - -

. . .

MR. RICHARDSON (counsel for Mr. Jenkins): I have his W-2, Your Honor, from 2015, that was from Apple Incorporated when he was employed there. The 1040 from 2014.

THE COURT: And what is it, the W-2 and the 1040, what does it show as a gross income or adjusted gross income?

MR. RICHARDSON: So, the 1040 in 2014 shows a - - let's see, adjusted gross income, five hundred seventy-nine thousand, one hundred ten dollars ($579,110.00). However, his tax return for 2018 or tax return carry overs from 2018 shows thirty-six thousand, six hundred seven dollars ($36,607.00) from OPEA. His 2017 tax return shows household income, twenty-seven thousand, eight hundred and eighty dollars ($27,880.00).

. . .

THE COURT: Do we show what [he] made in 2015 and '16?

MR. RICHARDSON: I believe I have those documents, Your Honor. Yes. I have 2015, I have a taxable income of two-hundred ninety-six thousand, seven hundred and eighty-five dollars ($296,785.00), which was a decrease from 2014 of two hundred and seventy-six thousand, one hundred and twenty-four dollars ($276,124.00). And then for 2016, I have a taxable income of zero dollars. I have an adjusted gross income of six thousand, four hundred and eleven dollars ($6,411.00).

THE COURT: So my question to you sir, is in 2014 and 2015 you were making five hundred thousand and three hundred thousand. And then the following year you went down to zero and twenty-seven thousand and thirty thousand. Why such a drastic decrease?

MR. DICKENS: This is kind of the way the oil field industry works, Your Honor. We do - - dad does oil and gas work - - electrical oil and

3

gas work. And when it is up it is up and you are really making a lot of money. And when it is down it stops, it is completely dead.

The trial court gave the following reasons in open court for his decision to reduce the child support amount:

> THE COURT: The Court finds that - - the Court is concerned that - - this is what the Court will do. The Court will give - - a decrease - - decrease child support in the amount of eleven hundred ($1,100.00) dollars. The Court does make a finding that perhaps - - the Court is concerned about him and his Dad adjusting income to suit their personal purposes. But for the last three years it does show that he has had a significant decrease. The Court will make the adjustment retroactive to the date of filing.

A judgment, signed October 25, 2018, was entered reading that "[S]upport amount is modified and decreased in an amount of $1,100.00, changing support to $794.06 per month effective July 11, 2018."

Following this, a "Motion for Clarification" was requested. A hearing on that motion was held on November 28, 2018. The purpose of the motion was explained by Summer Perron, the support enforcement case worker who testified at the prior hearing:

> A: Okay. This case was previously heard July 25th, of this year, for modification at Mr. Dickens' request. His obligation at the time was one thousand, eight hundred and ninety-four dollars and six cents ($1,894.06) per month. And he had had a change of income. Our worksheet with his new income for that hearing showed child support of six seventy-five, thirty-seven. ($675.37). However, after testimony by Ms. Whatley and Mr. Dickens, the Court stated child support was reduced in an amount of eleven hundred dollars ($1,100.00). It was my understanding that the new obligation would be eleven hundred dollars ($1,100.00) per month. After the hearing I received a call from Mr. Dickens and spoke with Mr. Richardson. They were under the impression that the obligation was reduced by eleven hundred ($1,100.00), which would make the new obligation seven ninety-four, oh-six ($794.06). So it was scheduled today for a clarification hearing.

The trial court stated that it would "listen to the transcript and come back and make a minute entry of what the Court - - what the intention of the Court was at that time." After a recess to listen to the transcript, the trial court reconvened the matter and rules as follows:

4

THE COURT: . . . I listened to the - - reviewed the tape and what the Court stated. And the Court thought it was quite clear, that child support reduction or modification would be granted, but it would be granted from - - what was the original amount, seventeen or eighteen hundred dollars per month?

MR. BERTRAND: Eighteen.

MS. PERRON: Eighteen ninety-four, oh six ($1,894.06).

THE COURT: Eighteen ninety was reduced to eleven hundred dollars ($1,100.00).

MR. BERTRAND: Okay.

THE COURT: And that is eleven hundred dollars ($1,100.00) per month. Not reduced by eleven hundred dollars. And that is what I did. That is what I thought, that is what I recall, and that is what I heard when I listened to the tape. Okay.

Counsel for Mr. Dickens objected to the trial court's ruling on the record. On December 19, 2018, Mr. Dickens filed a Motion and Order for Devolutive Appeal. A judgment was signed on January 16, 2019, holding that "[t]he July 25, 2018 judgment is clarified in that the child support amount was modified and decreased to $1,100.00 per month."

On appeal, Mr. Dickens asserts the trial court erred by substantively amending the October 25, 2018 judgment in violation of La.Code Civ.P. art. 1951. Alternatively, he also contends the trial court erred by amending the October 25, 2018 judgment to reflect a child support obligation in excess of the Louisiana Support Guidelines.

**ANALYSIS**

In his first assignment of error, Mr. Dickens asserts that the "clarification" of the October 25, 2018 judgment improperly amends a final judgment in violation of La.Code Civ.P. art.1951. Article 1951 provides that a final judgment may be amended to alter the phraseology of the judgment, as long as the substance is not affected, or to correct errors in calculation. A judgment, therefore, may be amended by the trial court when the amendment takes nothing from or adds nothing to the

5

original judgment. *Bourgeois v. Kost*, 02-2785 (La. 5/20/03), 846 So.2d 692; *Perrodin v. S. Siding Co., Inc.*, 524 So.2d 885 (La.App. 3 Cir.1988). In order to substantively change a judgment, the proper procedure is to file a motion for new trial, submit a timely application for appeal, or by consent of the parties. *In re State ex rel D.T.*, 03-166 (La.App. 3 Cir. 6/4/03), 847 So.2d 799.

We do not find the clarification of the original judgment made a substantive change in violation of La.Code Civ. P. Art. 1951. The change made was simply to set forth the trial court's intent to reduce Mr. Dicken's child support to $1,100.00 per month. The trial court, after reviewing the transcript, stated unequivocally that it was always his intent to reduce child support to $1,100.00, and that was what he believed he had done. Ms. Perron also stated at the conclusion of the October 25, 2018 hearing, it was her "understanding that the new obligation would be eleven hundred dollars ($1,100.00) per month." It was only Mr. Dickens' counsel, who prepared the judgment, that believed the amount of child support was to be $794.06 per month. Therefore, we find no violation of La.Code Civ.P. art. 1951 occurred in the clarification of the original judgment.

In his second assignment of error, Mr. Dickens argues the trial court erred in deviating from the child support guidelines by failing to "give any specific reason why its deviation from the guidelines was justified." We disagree.

As set forth above, Ms. Perron testified that based solely on the income tax returns submitted by Mr. Dickens, the guidelines set forth a support obligation of $650.00 per month. However, the trial court noted that Mr. Dickens' reported earnings decreased from $579,110.00 in 2014, to $296,785.00 in 2015, to only $27,880.00 in 2017. The trial court specifically stated in open court during the hearing that "the Court is concerned about [Mr. Dickens] and his Dad adjusting income to suit their personal purposes." The trial court also expressed concern when

it was revealed that years earlier, the control of the company had been placed in the son's name while the father dealt with "an issue with his ex-wife."

The law is clear that a trial court may deviate from the guidelines if it finds that application of the guidelines would not be in the child's best interest or would be inequitable to the parties. *Guillot v. Munn*, 99-2132 (La. 3/24/00), 756 So.2d 290, 295. We find the trial court's clear concern over the precipitous drop in Mr. Dickens' earnings supports his decision to deviate from the support guidelines. We find no merit in this argument.

## DECREE

For the foregoing reasons, the judgment of the lower court is affirmed. All costs of this appeal are assessed to appellant, Avery Dickens, II.

**AFFIRMED.**