I «SUSAN M. CHEHARDY, Judge.
In this matter, the trial judge granted David Sutton’s request for a reduction in child support for his son, Gage Sutton. On appeal, David Sutton seeks a further reduction in his child support payment to Gage’s mother, Shane Borne. For the following reasons, we affirm the trial court judgment.
On July 1, 1998, Gage Sutton was born to Shane Borne(“Borne”) and David Sutton(“Sutton”). In a consent judgment that was rendered on August 3, 1999 and signed on February 29, 2000, Borne and Sutton agreed to joint custody of Gage with Borne designated as the primary domiciliary parent. Sutton was awarded visitation every other weekend and two evenings every other week. A visitation schedule for holidays and vacations was also established. Sutton was ordered to pay child support of $525.08 per month. Sutton was also ordered to pay 64% of uncovered medical expenses, including co- . payments.
On September 25, 2003, Sutton filed a Rule for Child Custody and to fix a Schedule of Visitation. In his petition, Sutton sought domiciliary status and equal physical custody, i.e. each parent would have the child for six months a year. On October 15, 2003, Borne filed a Rule to Increase Child Support and Modify Visitation and for Contempt. In her petition, Borne alleged that circumstances had | ^changed because Sutton’s income had increased and Gage’s educational and clothing expenses had increased. Borne also averred that Sutton had violated the consent agreement by unilaterally reducing his child support payment to $500.00 instead of $525.08 as ordered in the consent judgment.
On November 17, 2003, the trial judge ordered an evaluation of the parties by a mental health professional with The Center for Family and Youth Services. On January 26, 2004, the parties entered into another consent judgment that maintained Borne as the domiciliary parent and awarded Sutton visitation amounting to 6 days every two weeks. The consent judgment also stated that “the parent who does not have physical custody of the child shall have reasonable and liberal telephone access with[sic] the child.”
On February 4, 2004, Sutton filed a “Rule to Show Cause why Child Support should be Decreased.” In his petition, Sutton alleged that he was granted “shared custody” of Gage and “is therefore entitled to a reduction in child support.” A hearing was set for March 19, 2004.
On February 19, 2004, Borne filed a Rule for Contempt and Rule to Show Cause alleging that Sutton had violated the January 2004 consent judgment by refusing to allow her liberal telephone ac *130 cess to Gage while Gage was in Sutton’s custody. Borne sought attorney’s fees and court costs. Borne also sought the right of first refusal to care for Gage if Sutton was unable to do so overnight during his scheduled visitation period. A hearing was set for March 19, 2004.
At the March 19, 2004 hearing, Shane Borne testified and also called Dr. Danny Roussel from The Center for Family and Youth Services, who was appointed to conduct a custody evaluation in this case. Dr. Roussel recommended that Shane Borne remain primary custodial parent with increased visitation to David Sutton. He specifically recommended that Borne remain the domiciliary parent “based on the consistency [that] she has been there since birth.” Dr. 1 ¿Roussel encouraged increasing Sutton’s visitation to 6 days out of every 14 days but discouraged his desired 50/50 custody sharing or granting co-domiciliary status.
Dr. Roussel also recommended that each parent should have the right of first refusal to care for Gage if the custodial parent will be away from Gage overnight during their scheduled visitation. He also stated that Gage has been diagnosed with an oppositional disorder so Gage needs a “very very structured” environment. Dr. Roussel stated that continued strife between his parents creates an oppositional culture for Gage, which is not positive for him. Dr. Roussel stated, in fact, that Gage is aware of the conflict and stated that he wants “the grown-ups in his life to stop.” Dr. Roussel also testified that it is important to maintain stability in Gage’s life. - Since Gage is succeeding in the current educational environment, Dr. Roussel recommended that Gage remain enrolled at his current private school, which he has attended for three years.
Shane Borne testified that she is a dental assistant who makes $13.00 per hour. She works less than 40 hours a week and does not receive overtime pay. She has no other source of income. She presented her 2003 W-2s and 2003 income tax return that showed her income as $18,610.00. She lives with her parents and does not pay rent or utilities. Borne presented documentation of the loan that she incurred to pay Gage’s school tuition for 2003-2004, which was $3090.00. Borne also documented the cost of ten weeks of summer camp, which totaled $600.00. She also testified that she pays for before and after-school care, school uniforms, school supplies, lunch money, extracurricular activities, clothing, and food. Further, Borne stated that she routinely incurs extraordinary medical expenses for Gage, who has been diagnosed with Attention Deficit Disorder and porphyria, a blood disease.
|fiDavid Sutton testified that he thought the latest custody arrangement gave him visitation with Gage for “probably eight” days out of every 14 days. He stated that he works for All-Star Electric and is paid $16.00 per hour. He said that he is not guaranteed overtime but he will receive overtime pay if he works more than 40 hours in one week. He testified that he does not have any other sources of income.
Sutton testified that he left his job at Graham Packaging, which paid $18.22 per hour, so he could spend more time with Gage. On cross examination, Sutton admitted, when he was asked if illness caused him to leave Graham Packaging, that he “would probably say yeah.” He stated that he was “goofing up things” and his bosses had “meetings” with him immediately before he decided to leave Graham Packaging. He further admitted that his gross income for 2003 from Graham Packaging was $34,458.44. He also admitted that he worked part-time as a mechanic while he lived with Borne to help her pay bills.
*131 Sutton acknowledged that he got married on January 31, 2004. He and his wife, who works outside of the home, reside together and share expenses.
David Sutton also testified that, in his opinion, his son should not attend private school because St. Charles Parish public schools, which he attended for four years, are “very adequate.” He admitted on cross examination that he attended and graduated from private school. Sutton testified that he has a school-aged step-son and his wife is pregnant. He 'opined that sending Gage to public school would be better because “we wouldn’t be able to afford to send all of them to private school.”
Sutton also admitted that, on the first weekend after the January 2004 consent judgment that instituted the new visitation schedule, he got married, went on his honeymoon, and left Gage with his mother and his brother. Carol Sutton, David’s mother, testified that she did not prevent Borne from speaking to Gage on the telephone during that time. She admitted that her other son was visiting that | (¡weekend, and if he refused to allow Borne to speak with Gage that she “don’t know anything about it.”
On March 19, 2004, after the hearing, the trial judge granted each party the right of first refusal to care for the child when the current custodial parent will be unable to care for the child overnight. Further, the trial judge found Sutton in contempt for failing to allow Borne telephone visitation with Gage during Sutton’s visitation with the child. The trial judge awarded Borne attorney’s fees and court costs. The trial judge took Sutton’s request for a reduction in child support under advisement.
On April 26, 2004, the trial judge granted Sutton a reduction in child support from $525.08 to $514.23, retroactive to the date of filing of the rule. Further, the trial court ordered Sutton to maintain health and hospitalization insurance on Gage and reduced Sutton’s percentage share of uncovered medical expenses to 55%. In his Reasons for Judgment, the trial judge stated he did not consider the recent increase in Sutton?s visitation with Gage as a basis for reduction because “the mother is the primary domiciliary parent and has to provide for the essentials (clothing and schooling) for the child.”
The trial judge then considered, as his only change in circumstances, Sutton’s decline in monthly income from $4,159.00 in 2003 to $2,773.00 in 2004. Further, after hearing testimony from the appointed expert that Gage’s current school environment is beneficial to him, the trial judge, noting that no evidence was introduced to contradict that testimony, decided to consider the parties’ child support obligation with the private school tuition included. After reducing Sutton’s child support obligation to $603.42,[1] the trial judge issued, what he termed, a “word of caution to Mr. Sutton:”
|7The evidence brought out at trial indicated that Mr. Sutton voluntarily took less money when he changed jobs. While the Court cannot argue with Mr. Sutton’s rationale for wanting to change jobs (the schedule was more conducive to his custody times with his son), the Court has to point out to Mr. Sutton that he can’t take it upon himself to voluntarily reduce his income and then ask the Court to reduce the child support accordingly. When parents bring a *132 child into this world, they often have to sacrifice then' wants and needs to the wants and needs of the child. Sacrifice is part of child-rearing. When it comes to finances, the children come first. When parents interject the court system into the picture, they voluntarily relinquish some of their decision-making authority (since they can’t work out an agreement between themselves.)[sic]
That being said, this Court wants to caution Mr. Sutton that a father can’t voluntarily change jobs and automatically think that a court will automatically change the father’s child support obligation. While a slight reduction is being granted in this case, future requests will be considered with this caution in mind.
On appeal, Sutton has asserted two assignments of error: first, the lower court abused its discretion and committed manifest error when it failed to calculate the child support under a shared custodial arrangement when the facts and law mandated that this be done and, second, “equity and justice cry out for a modification by this Court under this fact scenario, and the jurisprudence of this State mandates this modification.”
The standard of appellate review of factual findings in a civil action is a two-part test: (1) the appellate court must find from the record there is a reasonable factual basis for the finding of the fact finder, and (2) the appellate court must further determine the record establishes the finding is not clearly wrong (manifestly erroneous). Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Factual findings should not be. reversed on appeal absent manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). If the trial court’s “findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse.... ” Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La. 1990). Consequently, when there are two permissible views of the evidence, the fact finder’s choice |Rbetween them cannot be manifestly erroneous. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 883 (La.1993).
By his assignments of error, Sutton contends that the trial court abused its discretion and committed manifest error “when it failed to calculate the child support under a shared custodial arrangement when the facts and law mandated that this be done.” In seeking a further reduction, Sutton also asks this Court to perform “its constitutional duty” and exercise its “complete freedom to do justice on the record regardless of whether a particular legal point of theory was made, argued, or decided by the Court[sic] below.”
In this case, the record reflects that Sutton and Borne agreed on January 26, 2004, to a change in-their joint custody arrangement for Gage, which allowed Sutton an increase in visitation. On appeal, Sutton argues, as he did in the district court, that his increased visitation with Gage amounts to “shared custody.” Sutton relies on La. R.S. 9:315.9, which provides, in relevant part:
A. (1) “Shared custody” means a joint custody order in which each parent has physical custody of the child for an approximately equal amount of time.
(2) If the joint custody order provides for shared custody, the basic child support obligation shall first be multiplied by one and one-half and then divided between the parents in proportion to their respective adjusted gross incomes.
* * *
B. Worksheet B reproduced in R.S. .9:315.20, or a substantially similar form adopted by local court rule, shall be used *133 to determine child support in accordance with this Subsection.
The record before us reflects three separate consent judgments regarding custody of the parties’ minor child; none of these consent judgments define the joint custody arrangement as “shared custody.” In fact, Sutton admits that he did not raise the issue of reduction in child support based on percentage of physical custody in the lower court because he concedes that he did not argue in the lower court for “a shared custody Schedule B.” Although Sutton argues that the trial judge “recognized that the parties enjoyed a shared custody arrangement,” we find |9it apparent that the trial court in this case did not consider the agreed-upon increase in visitation tantamount to a change in custody. At the hearing, the trial judge stated that “custody is not at issue today... .There is a much different standard for the change of custody.”
Further, in his written Reasons for Judgment, the trial judge declined to consider Sutton’s increased visitation as a basis for reduction and noted, ‘While the Court is willing to grant an increase in visitation/custody with the minor child, the Court does not think it is fair to use that as a basis to reduce child support when the mother is the primary domiciliary parent and has to provide for the essentials (clothing and schooling) for the child.” We find no abuse of the trial court’s discretion in declining to define the parties’ arrangement as “shared custody” in this case.
Furthermore, even if this Court were to accept the parties’ custody arrangement as “shared custody,” we cannot say that Sutton bore the requisite burden to warrant a greater reduction. In his brief, Sutton quotes extensively from Guillot v. Munn, 99-2132 (La.3/24/00), 756 So.2d 290. In Gidllot, the Louisiana Supreme Court considered “whether Louisiana’s child support guidelines automatically allow for a deviation from their formulaic determination of the support obligation based solely on the amount of time a nondomieiliary parent spends with a child.” Id. at 292. Interestingly, although Sutton quotes more than three pages from Guillot in his brief, he does not set forth the test that was enunciated:
the party urging a reduction in the child support obligation based on the amount of time spent with the child must bear the burden of proving that he or she exercises shared custody or extraordinary visitation with the child, that the extra time spent with the nondomieiliary parent results in a greater financial burden on that parent and in a concomitant lesser financial burden on the domiciliary parent, and, finally, that the application of the guidelines would not be in the best interest of the child or would be inequitable to the parties.
I iota
We must again point out that the trial judge did grant a reduction in Sutton’s child support obligation by reducing his cash payment and his percentage of uncovered medical expenses based on Sutton’s decreased income. He seeks further reduction based on the amount of time he cares for his son. After reviewing the record, we cannot say that Sutton, the nondomieiliary parent, presented evidence that the extra time that he cares for Gage results in a greater financial burden or a concomitant lesser financial burden on Borne.
A trial court’s child support order will not be reversed except for abuse of discretion. Hogan v. Hogan, 549 So.2d 267, 271 (La.1989). Based on the record before us, we do not find that the trial court abused its discretion in its calculation of Sutton’s *134 child support obligation. Costs of this appeal are taxed to Sutton.

AFFIRMED.

. The monthly payment breakdown is $89.19 to be paid to the insurer for Gage's health insurance and $514.23 to be paid to Shane Borne in two installments of $257.12, due on the 3rd and 18th of each month.