MICHELLE DESHOTEL BRIGNAC

VERSUS

KEITH ANTHONY BRIGNAC

NO. 24-CA-84

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-NINTH JUDICIAL DISTRICT COURT
PARISH OF ST. CHARLES, STATE OF LOUISIANA
NO. 86,263, DIVISION "D"
HONORABLE M. LAUREN LEMMON, JUDGE PRESIDING


December 04, 2024


**SCOTT U. SCHLEGEL**
**JUDGE**


Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, Marc E. Johnson, John J. Molaison, Jr., and Scott U. Schlegel


**AFFIRMED IN PART; REVERSED IN PART;**
**LAST PARAGRAPH OF JUDGMENT IS VACATED**
> SUS
> SMC
> MEJ


**WICKER, J., CONCURRING IN PART,**
**DISSENTING IN PART, WITH REASONS**
> FHW


**MOLAISON, J., CONCURS IN PART/DISSENTS**
**IN PART FOR REASONS ASSIGNED BY WICKER, J.**
> JJM

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
MICHELLE DESHOTEL BRIGNAC
Caitlyn L. Mayer

COUNSEL FOR DEFENDANT/APPELLEE,
KEITH BRIGNAC
Jonathan M. Rhodes

**SCHLEGEL, J.**

Appellant, Michelle Deshotel Brignac, appeals the trial court's judgment reducing the amount of monthly child support owed by appellee, Keith Anthony Brignac. Ms. Brignac contends that the trial court erred by: 1) finding a material change in circumstances warranting the reduction; 2) deviating from the child support guidelines; and 3) finding that she is voluntarily underemployed and imputing income to her. For the reasons stated more fully below, we affirm the trial court's judgment modifying the child support award.

Finally, both parties agree that the issue of the amount of the children's tuition paid by each party was not before the trial court. Thus, we vacate the last paragraph of trial court's judgment regarding the payment of the children's school tuition.

## FACTS AND PROCEDURAL BACKGROUND

The parties married in 2008 and established their matrimonial domicile in St. Charles Parish, Louisiana. They have three minor children, a daughter and twin boys, who were 13 and 11 years old at the time of the October 4, 2023 hearing on the motion to modify child support. After filing for divorce in May 2019, the parties entered into a consent judgment on June 20, 2019, providing for joint custody of the children with Ms. Brignac designated as domiciliary parent. They also agreed to share equal decision-making authority on the children's education and medical issues. The consent judgment also provided for Mr. Brignac to pay $1,700.00 per month for child support and to be responsible for 70% of private school tuition, extracurricular expenses and extraordinary medical expenses incurred for the children, with Ms. Brignac responsible for the remaining 30%.

The following year on June 5, 2020, the parties entered into a consent judgment regarding the community property partition. The parties agreed to allocate ownership of the marital home in Hahnville, Louisiana to Ms. Brignac. In

return, she assumed responsibility to pay the home's mortgage and equity line of credit, as well as a loan owed to her father for home improvements. The parties also agreed that Ms. Brignac would refinance the home mortgage to remove Mr. Brignac's name and pay Mr. Brignac a $60,000.00 equalization payment within 90 days of execution of the consent judgment. With respect to the retirement assets, the parties agreed that Ms. Brignac would receive $122,825.14 from Mr. Brignac's "Monsanto Savings and Investment Plan (SIP) as of May 10, 2019, together with any earnings and losses through the date of segregation of the account, MINUS $17,705.00 as of the date of segregation of the account, pursuant to a QDRO." Ms. Brignac was also allocated one half of the community interest in Mr. Brignac's Monsanto Pension.

On March 23, 2023, Mr. Brignac filed a motion to modify child support. He alleged that a material change in circumstances occurred since the parties entered into the consent judgment based on several different grounds, including that: 1) Ms. Brignac experienced a significant increase in income for purposes of child support calculations; 2) Ms. Brignac changed the children's living arrangements when she sold the former matrimonial domicile in Hahnville, Louisiana and moved with the children into her parents' home in River Ridge, Louisiana; and 3) Ms. Brignac unilaterally enrolled the oldest child in Archbishop Chapelle High School causing an increase in school tuition costs without consulting Mr. Brignac.

Following an evidentiary hearing on October 4, 2023, the trial court entered a written judgment decreasing Mr. Brignac's monthly child support obligation. In the judgment, the trial court explained that Mr. Brignac's gross monthly income was $11,132.00 per month and that Ms. Brignac was underemployed. Thus, the court imputed income to her at $28.00 per hour and 40 hours per week, for a total of $4,853.00 per month. The court also recognized Mr. Brignac's payment of $412.00 per month for the children's health insurance. Based on this information,

the trial court calculated Mr. Brignac's monthly child support obligation as $1,941.00.

The trial court then decided to deviate from the child support guidelines, pursuant to La. R.S. 9:315.1(B)(1), and reduce Mr. Brignac's child support obligation to $1,500.00 per month based on its determination that a downward deviation would be equitable to Mr. Brignac. The trial court concluded that his income is not augmented by the significant recurring gifts and assistance Ms. Brignac has received from her family, as well as other sources of income available to pay her monthly expenses. On November 8, 2023, Ms. Brignac filed a timely motion for appeal, which the trial court granted. This appeal follows.

## DISCUSSION

Ms. Brignac raises four assignments of error on appeal: 1) the trial court erred by granting Mr. Brignac's motion to modify child support because there is no material change in circumstances; 2) the trial court erred by deviating from the child support guidelines; 3) the trial court erred by finding Ms. Brignac was voluntarily underemployed; and 4) the trial court erred by including a discussion in the judgment regarding the payment of the children's tuition.

### *Material Change in Circumstances and Deviation From the Child Support Guidelines*

An award of child support is entitled to great weight and will not be disturbed on appeal absent an abuse of discretion. *Duffel v. Duffel*, 10-274 (La. App. 5 Cir. 11/9/10), 54 So.3d 675, 677. The Louisiana Child Support Guidelines set forth the method for implementation of the parental obligation to pay child support. *See* La. R.S. 9:315.1. There is a rebuttable presumption that the amount of child support obtained by use of the guidelines is proper and in the child's best interest. La. R.S. 9:315.1(A); *Estapa v. Lorenz*, 11-852 (La. App. 5 Cir. 3/27/12), 91 So.3d 1103, 1106.

To apply the child support guidelines, the court must initially determine the gross income of the parties. *See* La. R.S. 9:315.2(A); *Pennington v. Pennington*, 11-1022 (La. App. 1 Cir. 12/21/11), 80 So.3d 763, 765. Pursuant to La. R.S. 9:315(C)(3)(a), "gross income" is defined in pertinent part to include income from any source including pensions and recurring monetary gifts:

> (a) The income from any source, including but not limited to salaries, wages, commissions, bonuses, dividends, severance pay, **pensions**, interest, trust income, **recurring monetary gifts**, annuities, capital gains, social security benefits, workers' compensation benefits, basic and variable allowances for housing and subsistence from military pay and benefits, unemployment insurance benefits, disaster unemployment assistance received from the United States Department of Labor, disability insurance benefits, and spousal support received from a preexisting spousal support obligation; (Emphasis added.)

The standard for modifying a child support award is set forth in La. C.C. art. 142 and La. R.S. 9:311(A)(1). *Hall v. Hall*, 11-60 (La. App. 5 Cir. 5/24/11), 67 So.3d 635, 639, *writ denied*, 11-1752 (La. 10/14/11), 74 So.3d 214. La. C.C. art. 142 provides that "[a]n award of child support may be modified if the circumstances of the child or of **either parent** materially change and shall be terminated upon proof that it has become unnecessary." (Emphasis added.) La. R.S. 9:311(A)(1) provides, "[a]n award for support shall not be modified unless the party seeking the modification shows a material change in circumstances of one of the parties between the time of the previous award and the time of the rule for modification of the award. The material change must be substantial and continuing since the last award for support."

Under La. R.S. 9:315.1(B)(1), the court may deviate from the guidelines if their application would not be in the best interest of the child or would be inequitable to the parties:

> The court may deviate from the guidelines set forth in this Part if their application would not be in the best interest of the child or would be inequitable to the parties. The court shall give specific oral or written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application

of the guidelines and the particular facts and circumstances that warranted a deviation from the guidelines. The reasons shall be made part of the record of the proceedings.

Generally, a child support award is entitled to great weight and will not be disturbed on appeal absent an abuse of discretion. *Duffel*, 54 So.3d at 677. It is well settled that the trial court's conclusions of fact regarding financial matters underlying an award of child support will not be disturbed in the absence of manifest error. *Greene v. Greene*, 19-528 (La. App. 5 Cir. 5/28/20), 296 So.3d 1239, 1247. The determination of whether a material change of circumstances has occurred is a question of fact and will not be disturbed absent manifest error. *Hall*, 67 So.3d at 639. Deviations by the trial court from the child support guidelines shall not be disturbed absent a finding of manifest error. La. R.S. 9:315.17.

Further, the trial court's determination of the sources of a parent's gross monthly income and his/her credibility is subject to a manifest error review. *Bell v. Jackson*, 18-1075 (La. App. 1 Cir. 5/31/19), 278 So.3d 382, 385-86. The trial judge having observed the demeanor of the witnesses is in the better position to rule on their credibility. *Hall*, 67 So.3d at 639.

On appeal, Ms. Brignac first contends that the trial court erred by reducing the child support award because there was no material change in circumstances. She argues that Mr. Brignac failed to meet his burden to prove a material change in circumstances because his salary has increased since the parties entered into the consent judgment in 2019, and he failed to demonstrate an inability to pay child support.

In response, Mr. Brignac argues that the trial court did not err in finding a material change of circumstances based on its conclusion that Ms. Brignac's ability to pay significant expenses every month demonstrated an increase in income. Mr. Brignac argues that this increase in income includes imputed hourly income, interest income, annuities, pensions, trust income, free housing and recurring

monetary gifts. He further contends that a material change in circumstances resulted from Ms. Brignac's decision to sell the marital home in St. Charles Parish and to move with the children into her parents' home in Jefferson Parish where she lived rent free for two years. Finally, he points to the material change in circumstances resulting from Ms. Brignac's unilateral decision to enroll their daughter in a private high school that costs twice as much as the private grammar school she previously attended. Prior to the start of the evidentiary hearing, the parties and their counsel discussed on the record with the trial court, Ms. Brignac's desire for their twin boys to also attend private high school in the near future. This would double the amount of the private school tuition the parties are paying for the twins, and Mr. Brignac contends he cannot afford it.

The trial court based its findings in this matter primarily on Ms. Brignac's testimony regarding her ability to pay expenses that greatly exceed her monthly income. The trial court determined that she undoubtedly enjoys other sources of income:

> Ms. Brignac testified that she pays $1,000 per month for her daughter's high school tuition, $800 per month for a car note, and $10,000 per month for credit card charges. Ms. Brignac also testified that she will begin to pay a house note for the home she purchased in August 2023 at an interest rate of 2.8%. Ms. Brignac could not estimate what the what the (sic) house note would be. Ms. Brignac further testified that she pays off the monthly credit card charges in full monthly. Considering Ms. Brignac's income, the Court finds that she must have another source of income - other than her monthly income of $4,853 - which she uses to pay her enumerated expenses. Ms. Brignac testified about recurring cash gifts from her father and mother both during the marriage and after the marriage, as well as a Section 529 plan for the children's education. She testified that she does not wish to tap the Section 529 plan for current educational needs.

La. C.C. art. 142 and La. R.S. 9:311(A)(1) both explain that a material change in circumstances can occur if the circumstances of either party materially change. During her testimony, Ms. Brignac admitted that she was able to pay monthly expenses that greatly exceed the monthly income she earns from her job

and the amount she receives for child support. Ms. Brignac claimed that her parents' monetary gifts were sporadic but admitted that she lived rent free in the home until she recently purchased it in August 2023 with a greatly reduced interest rate of 2.8%. Further, prior to the evidentiary hearing, the parties and their counsel discussed the fact that Ms. Brignac's father funded a 529 education plan for the children's college education and further recognized that these funds could be used to cover the cost of private school tuition that was increasing the financial burden on the parties. Ms. Brignac also testified that she was funding her current expenses by depleting her savings and using the distributions that she received from Mr. Brignac's pension as part of the divorce settlement. She testified that she received her last distribution on September 30, 2023 and will not receive any further distributions.

As explained above, child support is determined by considering the gross income of the parties, and it is within the trial court's discretion to decide what amount is appropriate for inclusion in gross income. *Lowentritt v. Lowentritt*, 11-703 (La. App. 5 Cir. 3/13/12), 90 So.3d 1081, 1085. The trial court imputed significant income to Ms. Brignac and her 2022 federal income tax return indicated that she had over $50,000 in additional income from pension payments. In addition, after weighing the credibility of the witnesses, the trial court determined that Ms. Brignac received recurring cash gifts from her parents that augmented her income. And Ms. Brignac enjoyed a significant reduction in her expenses as she was living in her parents' home rent free and therefore, no longer responsible for the home mortgage and equity line of credit she assumed the year before in 2020. Thus, we cannot find manifest error in the trial court's determination that a material change in circumstances existed at the time of the child support hearing.

For many of the same reasons, we find that the trial court did not commit manifest error by determining that a deviation from the child support guidelines

would be equitable to Mr. Brignac considering that he did not have access to the same income resources as Ms. Brignac. The trial court found as follows:

> Pursuant to La. Rev. Stat. 9:315.1(B)(l), the court finds that a downward deviation from the child support guidelines would be equitable to Mr. Brignac, considering that his income is not augmented by significant recurring gifts or the availability of a Section 529 plan. In determining to deviate from the guidelines, the Court considered the significant financial resources of Ms. Brignac, including the fact that she lived rent-free with the children for at least two years, has a Section 529 plan for the children's education, and receives recurring gifts from her family. Without the recurring gifts, Ms. Brignac could not pay her monthly expenses.

The court may deviate from the child support guidelines if the application of the guidelines would not be in the best interest of the child or would be inequitable to the parties. *See* La. R.S. 9:315.1(B)(1).

Mr. Brignac explained that regardless of his increase in income, he was unable to pay both the child support and his share of the private school tuition for the children. He testified that he did not handle the finances while the parties were married and has since learned that Ms. Brignac's parents provided financial assistance to pay for the children's private school education during and after their marriage.

In response, Ms. Brignac argues that she testified that her parents' monetary gifts were random and sporadic, and that she is currently using her savings and distributions from the divorce settlement to fund her current expenses. As a result, she contends that that the trial court erred in concluding that she was receiving recurring gifts and that a deviation was warranted due to inequity to Mr. Brignac.

Based on the significant expenses Ms. Brignac admitted that she could pay on an ongoing monthly basis, the trial court made a credibility determination and determined that the only logical conclusion was that Ms. Brignac must have other recurring sources of income and it would be inequitable to require Mr. Brignac to pay the full amount of the child support calculated pursuant to the guidelines. The

trial court reduced the amount of child support to $1,500.00, resulting in a yearly reduction of $2,400.00 considering that Mr. Brignac was previously paying $1,700.00 per month. Based on our review of the entire record, we cannot find that the decision to deviate from the child support guidelines was manifest error.

### *Voluntary Underemployment and Imputed Income*

We next address Ms. Brignac's assignment of error asserting that the trial court erred by finding her voluntarily underemployed and by imputing income to her in calculating the child support award.

As previously discussed, the court must initially determine the gross income of the parties when determining child support. *See* La. R.S. 9:315.2(A). Income means the actual gross income of a party, if the party is employed to full capacity. La. R.S. 9:315(C)(5)(a). Income also means the potential income of a party, if the party is voluntarily unemployed or underemployed; in such a case, his or her gross income shall be determined as set forth in La. R.S. 9:315.11. *See* La. R.S. 9:315(C)(5)(b) and 9:315.2(B).

La. R.S. 9:315.11 provides in pertinent part with respect to voluntary underemployment:

> A. (1) If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years. In determining the party's income earning potential, the court may consider the most recently published Louisiana Occupational Employment Wage Survey. In determining whether to impute income to a party, the court's considerations shall include, to the extent known, all of the following:
>
> > (a) Assets owned or held by the party.
> > (b) Residence.
> > (c) Employment and earnings history.
> > (d) Job skills.
> > (e) Educational attainment.
> > (f) Literacy.
> > (g) Age and health.
> > (h) Criminal record and other employment barriers.
> > (i) Record of seeking work.

24-CA-84                                    9

(j) The local job market.
(k) The availability of employers willing to hire the noncustodial parent.
(l) Prevailing earnings level in the local community.
(m) Other relevant background factors in the case.

(2) Absent evidence of a party's actual income or income earning potential, there is a rebuttable presumption that the party can earn a weekly gross amount equal to thirty-two hours at a minimum wage, according to the laws of his state of domicile or federal law, whichever is higher.

Thus, if a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential (rather than actual gross income), unless the party is physically or mentally incapacitated or caring for a child of the parties under the age of five years. *See* La. R.S. 9:315.11. Further, a party shall not be deemed voluntarily underemployed if the underemployment results through no fault or neglect of the party. *See* La. R.S. 9:315(C)(5). When determining whether a spouse is underemployed for the purpose of calculating a child support obligation, the court shall consider that spouse's earning capacity in light of all circumstances. *Lowentritt*, 90 So.3d at 1085. Whether a party is voluntarily underemployed is a question of good faith of the obligor parent. *Dugue v. Dugue*, 20-292 (La. App. 5 Cir. 3/24/21), 316 So.3d 170, 176. Voluntary underemployment is a fact-driven consideration based on the trial court's wide discretion in determining the credibility of witnesses; this factual determination will not be disturbed on appeal absent a showing of manifest error. *Id.*

In support of his argument that Ms. Brignac is voluntarily underemployed, Mr. Brignac introduced her payroll stub for the two-week period from 6/26/2023 to 07/10/2023. The pay stub indicates that Ms. Brignac only worked 51.29 hours during that two-week period. In response, Ms. Brignac claims that she works as a tax preparer and cannot control the hours she works due to the nature of her employment. She explained at the hearing that their busy season is from

November to April, and the time-period represented in the payroll stub introduced by Mr. Brignac was during the slow season. She testified that she works over 40 hours per week during the busy season, and that her hours level out over the year. She also explained that during the slow season there is not enough work for her to be employed for 40 hours a week.

Ms. Brignac also testified that she works reduced hours because of the children's school and extracurricular activities, and that her employer allows her to work the hours that she can when she does not have the children. The trial court determined that at an hourly rate of $28.00 per hour and an average of 40 hours per week for 52 weeks a year, Ms. Brignac would earn an annual salary of approximately $58,000.00 per year. However, Ms. Brignac reported earnings of only $32,000.00 on her 2022 federal tax return. Mr. Brignac argues on appeal that Ms. Brignac's actual reported income indicates that she only works part-time as she averages less than 22 hours per week. He contends that she is able to work full time and her decision to work part time is voluntary.

After considering the testimony and evidence, the trial court determined that Ms. Brignac is voluntarily underemployed. The trial court has wide discretion and we review the trial court's determination for manifest error. The parties' children are all over the age of five. In addition, though Ms. Brignac argues she cannot control the hours she works due to the nature of her employment, she testified that her employer essentially allows her to work part-time based on the children's schedules. Further, the income reported on her 2022 tax return indicates that Ms. Brignac worked only part-time.

Based on the foregoing, we cannot find that the trial court was manifestly erroneous by finding Ms. Brignac to be voluntarily underemployed and imputing income to her based on a 40-hour work week.

### *Discussion of Agreement Regarding School Enrollment and Tuition in October 4, 2023 Judgment*

Finally, the parties agree in their appellate briefs that the provision in the consent agreement allocating the percentages each party must pay for private school tuition was not raised as an issue in Mr. Brignac's motion to modify child support. Accordingly, we vacate the final paragraph of the October 4, 2023 judgment, which contains a discussion of parties' dispute arising from the enrollment of the oldest child in a private high school and the allocation of expenses.

## CONCLUSION

Having reviewed all of the evidence and testimony, and considering the applicable law, we find no manifest error or abuse of the trial court's discretion in its setting of the amount of the child support award that appellee, Keith Brignac, must pay at $1,500.00 per month and, thus, affirm the award. However, for the reasons discussed above we vacate the final paragraph of the October 4, 2023 judgment.

**AFFIRMED IN PART; REVERSED IN PART; LAST PARAGRAPH OF JUDGMENT IS VACATED**

MICHELLE DESHOTEL BRIGNAC          NO. 24-CA-84

VERSUS                            FIFTH CIRCUIT

KEITH ANTHONY BRIGNAC             COURT OF APPEAL

                                  STATE OF LOUISIANA


**WICKER, J., CONCURRING IN PART,**
**DISSENTING IN PART,**
**WITH REASONS**

Respectfully, I concur with the majority's decision to vacate the final paragraph of the October 4, 2023 judgment allocating private school tuition and expenses for the children, since that issue was not raised in Mr. Brignac's motion to modify child support. I also concur with that portion of the opinion finding that the district court did not abuse its discretion in attributing income to Ms. Brignac in calculating the child support obligation under the Guidelines, based on its finding that she is voluntarily underemployed.

I dissent, however, from the majority's opinion affirming the portions of the district court's judgment deviating downward from the Guidelines. As the majority correctly points out, an appeals court is to give great deference to the district court's credibility determinations and its decisions relative to child support. I nevertheless find that the district court abused its discretion in granting Mr. Brignac a downward deviation of in excess of $400.00 per month from the amount of his child support obligation established by the Guidelines.

There is a rebuttable presumption that the amount of support determined by the use of the Guidelines is in the best interest of the child and fairly apportions the support obligations between the parents. La. R.S. 9:315.1(A). A court may deviate from the Guidelines only if their application would not be in the best interest of the child or would be inequitable to the parties. La. R.S. 9:315.1(B).

Deviations should be allowed only in limited circumstances so that the function of the Guidelines is preserved. *Guillot v. Munn,* 1999-2132 (La. 3/24/00), 756 So.2d 290, 297; *Stogner v. Stogner,* 98-3044 (La. 7/7/99), 739 So.2d 762, 767. The party urging a deviation from the amount established by the Guidelines bears the burden of proving by a preponderance of the evidence that a deviation is warranted. *Guillot,* 756 So.2d at 297. Mr. Brignac did not meet this burden.

The factors urged by Mr. Brignac to entitle him to a downward deviation were that: (1) Ms. Brignac had moved with the children from Destrehan to River Ridge; (2) Ms. Brignac had enrolled their daughter in Archbishop Chapelle High School, which was more expensive than St. Charles Boromeo, the grammar school she attended at the time the Consent Judgment was entered; (3) his income had substantially decreased since the entry of the Consent Judgment rendering him unable to afford his child support and the increased private tuition obligation; (4) Ms. Brignac was voluntarily underemployed (a contention with which, as stated, I agree); and (5) Ms. Brignac received recurring monetary gifts from her family.

First, the parties' daughter had aged out of St. Charles Boromeo, after the entry of the Consent Judgment obligating Mr. Brignac to pay 70% of any private school tuition for the children. Although the parties' two sons continue to attend St. Charles Boromeo and will for the next two years, their daughter could not stay at the school.

Ms. Brignac enrolled their daughter at Chapelle, which is twice as expensive as St. Charles Boromeo. It is clear from the record that the main focus of Mr. Brignac's motion to modify child support was his objection to paying any additional private school tuition for his daughter to attend Chapelle.[1] Mr. Brignac also anticipatorily objected to paying any future private school tuition for his sons

---

[1] He did testify that he would have paid the child's private school tuition had she enrolled in St. Charles Catholic High School, which was only $1,000.00 less per year than Chapelle.

when they age out of St. Charles Boromeo. The evidence at trial, however, showed that Mr. Brignac was not paying *any* tuition to Chapelle for his daughter; rather he was paying $1,000.00 in tuition per month for his two boys. Ms. Brignac was paying the entire cost of her daughter's tuition at Chapelle.[2] It is impossible to predict now what the cost of Catholic school tuition will be in two years for the two sons.

Intertwined with the private school tuition issue was Mr. Brignac's allegation that his income had decreased substantially since the entry of the Consent Judgment and that he could not afford to pay his child support obligation *and* 70% of private school tuition for the children to attend Catholic schools. The evidence introduced by him, however, did not support that assertion.

At trial, Mr. Brignac testified that, at the time of the entry of the Consent Judgment, he was earning approximately $91,000.00 per year. Mr. Brignac further testified that he was on track to earn between $106,000.00 and $108,000.00 in 2023, the year of trial. The district court, found, based on Mr. Brignac's pay stub introduced as Exhibit P-1 at trial, that Mr. Brignac's income was $11,132.00 per month, which exceeds the amount to which Mr. Brignac testified. Thus, at the time of the trial on Mr. Brignac's rule, Mr. Brignac was earning significantly more than he was earning at the time of the entry of the Consent Judgment wherein he agreed to pay $1,700.00 per month in child support for his three children plus 70% of their private school tuition. Yet, he claimed these obligations rendered him unable to pay his own living expenses each month.

Mr. Brignac introduced no documentary or other corroborating evidence of his monthly expenses and why, when he was making more than $11,000.00 per month, he was unable to meet his child support obligations, which the district court

---

[2] This was already a reduction for Mr. Brignac. His tuition obligation would otherwise have been $1,400.00 (70% of $2,000.00 per month). Thus, by paying only for the boys, he was already receiving a $400.00 per month reduction in his support obligations.

found, under the Guidelines, amounted to $1,941.00 per month; rather, Mr. Brignac relied only upon his own self-serving testimony. In my opinion, Mr. Brignac did not meet his burden of proving that he could not afford his obligations under the Consent Judgment.

Next, Mr. Brignac alleged, and the district court agreed, that Ms. Brignac's lifestyle demonstrated that she had income from other sources, including regular and recurring monetary gifts from her family, and that her family had established a 529 educational savings account for the children, which could be used to fund private school tuition for the children. However, again, Mr. Brignac, who had the burden of proof on these issues, failed to introduce any documentary or corroborating evidence whatsoever to demonstrate that Ms. Brignac had received recurring monetary assistance from her family following the entry of the Consent Judgment. Nor did he introduce any evidence of the amount held in any 529 account or that funds were continuing to be contributed to such an account.

At best, Mr. Brignac established that, during their marriage, Ms. Brignac's family paid the expenses of condominiums in Florida for family vacations, from which he benefitted. Mr. Brignac admitted that he also continued to benefit from these family vacations with Ms. Brignac's family members after the divorce, without Ms. Brignac, who stayed behind to care for her ailing parents.

While Mr. Brignac testified that, during their marriage, Ms. Brignac regularly received monetary gifts from her parents, he also did not introduce evidence to establish that she had received such gifts between the time of the Consent Judgment and the hearing on his rule; nor did he introduce evidence demonstrating the amount of any such alleged gifts or that such gifts were regularly received by her. Thus, Mr. Brignac introduced no evidence, other than his own speculation and self-serving testimony, to support the conclusion that Ms. Brignac would be regularly receiving supplemental monies from her parents in the

future. In fact, Ms. Brignac testified, and Mr. Brignac acknowledged that Ms. Brignac's father had passed away. Ms. Brignac also testified that her mother suffers from dementia. Again, Mr. Brignac did not meet his burden of proof on this issue. *Barlow v. Barlow,* 2011-1286 (La. App. 3 Cir. 4/11/12), 87 So.3d 386, 395.

Ms. Brignac testified that she had only sporadically and occasionally received monetary gifts from her parents over the years; she had not received any regular or fixed monetary gifts. She also testified that no funds had been deposited into the 529 educational account that had been established by her father for the children for more than two years and that her father had contributed to the account for a total of five years while he was living. Mr. Brignac introduced no evidence to the contrary.

The district court's downward deviation also accounted for the fact that Ms. Brignac and the children had lived rent-free with her ailing parents at the time she moved in with them to act as their primary caregiver. Again, Mr. Brignac did not introduce any evidence beyond his own speculation of the value of this perceived benefit and it was clear that any such benefit would not be recurring. Ms. Brignac had purchased the house by the time of the hearing on the rule and was making monthly payments towards the purchase.

While the district court was well within its discretion to consider Ms. Brignac's (and the children's) lifestyle in determining the amount of support to be contributed by the parties, the evidence showed that Ms. Brignac's (and the children's) lifestyle had been funded primarily with the proceeds from the sale of the former family home and funds that were partitioned to her from Mr. Brignac's pension and 401K accounts. Mr. Brignac was aware of these facts and that these funds would not be recurring. Mr. Brignac failed to meet his burden of proof that a downward deviation was necessary or appropriate in this case.

Nevertheless, the district court deviated downward from the amount of support established under the Guidelines by more than $400.00 per month. Under the circumstances discussed above, in my opinion, the deviation is not in the best interests of the children; nor is it equitable. In my opinion the district court abused its discretion in deviating downward from the support amount established by the Guidelines on the showing made by Mr. Brignac.

For those reasons I respectfully concur, in part, and dissent, in part, from the majority's opinion.

MICHELLE DESHOTEL BRIGNAC               NO. 24-CA-84

VERSUS                                  FIFTH CIRCUIT

KEITH ANTHONY BRIGNAC                    COURT OF APPEAL

                                        STATE OF LOUISIANA

**MOLAISON, J., CONCURS IN PART/DISSENTS IN PART FOR**

**REASONS ASSIGNED BY WICKER, J.**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 4, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**24-CA-84**

### E-NOTIFIED
29TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE M. LAUREN LEMMON (DISTRICT JUDGE)
CAITLYN L. MAYER (APPELLANT)

### MAILED
JONATHAN M. RHODES (APPELLEE)
ATTORNEY AT LAW
1937 PENISTON STREET
NEW OLREANS, LA 70115